Peck, J.,
delivered the opinion of the Court.
Alexander Kelsey represents that on or about the 29th of August, A. D. 1863, he filed proposals with Captain E. D. Chapman, then acting quartermaster at the city of Saint Louis, to furnish two hundred thousand bushels of oats for the use of the government, at forty-three cents per bushel. It is alleged that Captain Chapman, in order to secure the filing of a bond for the faithful performance of contracts to be entered into, had, of his own motion, required that all bidders should deposit as a pledge, with their proposals, a sum of money. In obedience to this regulation the petitioner deposited with his proposal the sum of four thousand dollars, which still remains in the custody of the government, although he had complied with the conditions required of him by executing a bond ; but, before the contract was fully executed, it was agreed between the petitioner and Captain Chapman that the proposal and all subsequent proceedings between them should he can-celled and stand for naught, but that the money deposited by petitioner with Captain Chapman had been applied by him to the uses of the government, and it was not restored to petitioner, although he has frequently made application for that purpose to Captain Chapman and other proper officers.
Captain Chapman was examined as a witness, and testifies as follows :
“ In August, 1863, I was assistant quartermaster, stationed at St. Louis, Missouri, in charge of the forage department. On or about the 10th of August, 1863, I advertised for proposals to furnish oats, corn, and hay for the government. I required two cents a bushsl for each bushel of oats hid for, and two dollars a ton for each ton of hay, to he *375 deposited by tlie bidders with their bids, to be forfeited to the government unless the parties bonded. This was a regulation of my own, and was not disapproved of by my superiors, and was made for the purpose of preventing ‘ straw bids.’ For instance : a party — a reliable one — would bid, in his own name, to furnish grain at, say 75 cents per bushel; they would have in two or three other bids by others in their employ, ranging from 65 to 73 or 74. If no parties bid below their bid of 75 cents, these ‘straw bids,’ ranging from 65 to 74 cents, would not come forward to bond. If other parties bid below the 75 cents, then they would answer to the next highest ‘ straw bid.’ And they would also purchase low bidders out of the way. For instance: they would give a low bidder a thousand dollars or more, not to appear and enter into bonds, which they could well afford to do, when they would make, perhaps, six thousand dollars, or more.
“ On or about the 29th of August, 1863, bids were opened, and awards were made to Alexander Kelsey for 200,000 bushels of oats, and with David B. Martin for 100,000 bushels. Each of them deposited with me the amount required ; that is, Kelsey deposited with me $4,000 and Martin $2,000, and that money was carried into my accounts with the government. On the next morning these-parties reported to my office and gave the names of their bondsmen, and they gave their bonds, which were satisfactory. During the day various telegraphic despatches came in from the west and northwest stating that the frost had greatly injured the corn crop. This had the effect to create a great advance in the price of all kinds of grain, and oats and corn advanced rapidly in price. This alarmed the contractors, and they called at my office for the purpose of withdrawing their bids. As their bonds were not executed — not stamped and filed — I gave them permission to withdraw their bonds, and left it for the decision of General Allen whether the money deposited with me as forfeiture should be refunded to them. Under the proposals the money deposited was to be held till the parties bonded. In this case I permitted them to withdraw the bonds, they not being executed.
“ General Allen gave me verbal instructions to refund the mpnoy— the deposit — to the party. But before receiving the instructions from General Allen, I had taken the money up on my cash papers, and had expended it for the government. I also received instructions from the assistant quartermaster general, Charles Thomas, that where money was deposited by parties, and they failed to enter into bonds as per the conditions of the proposals, the money should not be paid back to them. *376 These are the reasons why I did not obey the verbal order of General Allen.
“The bonds were signed but not stamped, and I did not consider them perfect instruments until they were stamped by the parties. They were leftin my office with the contract clerk. I advised these parties to withdraw the bonds, as it was impossible for them to fulfil the contract as fast as the government required the grain.”
Upon this state of facts it would seem that the money deposited by the petitioner rightfully belongs to him, and should be returned.
The conditions upon which the money was to be forfeited, even if such an exaction was proper or justifiable, were either obviated or complied with to the satisfaction of the officer who stipulated for them, and who subsequently waived all claim to the money. But for this waiver the claimant might have preferred to go on with the contract and take the hazard of loss or gain under it.
The contract was rescinded without censure or complaint by any officer of the government, and without any condition or expectation of forfeiture of the money deposited. If the consent to forfeit was binding, the obligation to restore the money after consenting to relieve the party from the conditions of forfeiture was equally so.
It is insisted by the Solicitor for the United States that the money was paid in mistake of law, and therefore cannot be recovered. This is not a fair statement of the transaction. The money was not paid with any understanding that it was to cease to belong to the depositor, or that it was to satisfy a debt. It was all the while expected by him that it should be returned if he executed a satisfactory bond. He never-understood that he was parting with it finally, or that it would cease to bo his ; it was only pledged to secure the execution of the bond. Nor had the agent of the government any different understanding of the transaction.
Our conclusion is, that the petitioner should recover the sum of four thousand dollars, deposited by him with the agent of the government and applied to its use, and we direct a judgment accordingly.
David B. Martin v. The United States.
This case is in all respects like that of Alexander Kelsey, just decided, differing only in the fact that one hundred thousand bushels of oats were proposed to be delivered instead of two hundred thousand, and that only two thousand dollars were deposited by David B. Martin with Captain Chapman. Captain Chapman was also a witness, and *377 gave the same testimony as in the case of Alexander Kelsey. It is therefore ordered that Martin recover judgment for two thousand dollars.
Mr. A. L. Merriman for the claimant.
Mr. J. J. Weed, Assistant Solicitor, for the government.