KIMBALL *v.* HEWITT, Mayor, *et al.*

*(Common Pleas of New York City and County, Special Term.* August 10, 1888.)

1. MUNICIPAL CORPORATIONS—CONTRACTS—WITHDRAWING BID.

Under a statute requiring municipal contracts to be let to the lowest bidder, and forfeiting to the city the certified check deposited with such bid in case the bidder refuses to sign the contract within five days, the city officers have no right to allow a bidder to withdraw his bid, even before the bids are opened.

2. SAME—INJUNCTION—ACTION BY TAX-PAYER—GOOD FAITH.

When it appears that injunction proceedings by a tax-payer to restrain the allowance of a municipal contract were begun by one person and continued by another, whose name was inserted in the complaint after it had been completed, and who did not verify it until several days after the summons was issued, and that affidavits in support of the injunction were made by the vice-president of a corporation interested in the letting of the contract, the court will, in its discretion, dissolve a preliminary injunction as not asked for in good faith, though the contract was not awarded in accordance with law.

Motion to continue *pendente lite* an injunction restraining the defendants the mayor, the comptroller, and the commissioner of public works, individually or as a board, constituting the gas commission, under the provisions of Laws 1882, c. 410, § 69, from executing any contracts for furnishing the city of New York with electric lights with certain named electric light companies, under an award made by defendants pursuant to bids for the contract. Before the bids were opened, the request of the Electric Construction Company's counsel to be allowed to withdraw its bid was granted, and this action was

begun by Andrew J. Kimball, as a tax-payer of the city, to restrain defend-
ants from executing said contracts.

L. Laflin Kellogg, for the motion.    Francis Marion Scott, opposed

VAN HOESEN, J., (after stating the facts as above.)    Had the defendants
been acting in their own private business, there is no doubt that they could
have permitted the offer made by the Electric Construction Company to be
withdrawn, but, acting as public officers, they could not lawfully forego the
right that the city had acquired to insist that the company should either carry
out its offer or forfeit the amount that it had deposited as security.    When
the bid of the Electric Company, with the certified check that accompanied it,
passed into the hands of the commissioner of public works, the statute pre-
scribed the disposition that should be made of the one and the other.    The bid
was to be publicly opened by the officers, who are the defendants in this ac-
tion, and the contract was to be awarded to the lowest bidder.    If the lowest
bidder should refuse to execute, that is to say, sign the contract within five
days after notice that it had been awarded to him, the amount of the certified
check that he had deposited as security was to be forfeited, and retained by
the city as liquidated damages, and paid into the sinking fund.    No other dis-
position of the bid and the check was lawful.    It has been decided that where
the statute requires a public officer to award a contract for public work to
the lowest bidder, he may be restrained by injunction from giving it to any
one else, (2 High, Inj. §§ 1251, 1252,) and principle requires that the highest
bidder should not be made the lowest bidder by the withdrawal of the lower
bids.    It matters not how honestly the officials acted, (and no one questions
the absolute integrity of the distinguished gentlemen who are the defendants,)
their consent to the withdrawal of the bid was in conflict with the statute.

Now, who has the right to complain of their action?    The act of 1887 (chap-
ter 673) provides that an action to prevent any illegal act on the part of any
officers of a municipal corporation may be brought by any person whose as-
sessment shall amount to a thousand dollars, and who shall be liable to pay
taxes on such assessment to such municipal corporation.    The object of the
action is "to prevent waste or injury to the property, funds, or estate of such
municipal corporation."    The plaintiff alleges in his complaint that he pos-
sesses the qualifications mentioned in the statute, and there is nothing before
me to cast doubt upon his allegation.    But in all applications of this charac-
ter it is the duty of the court to see to it that he who undertakes to champion
the public cause is actuated by public motives, and that he is not making use
of the power of the court to accomplish some private end.    This is a familiar
rule, and it was applied by Judge VAN BRUNT in Hull v. Ely, 2 Abb. N. C.
440, a case that strongly resembles this.    There Mr. Hull, as a tax-payer,
brought an action against Mr. Ely, to prevent waste of the city's property
through a sale of certain ferry franchises in a manner that caused a loss to
the city treasury; but Judge VAN BRUNT denied an injunction, because, to
use his own language, "it is apparent from the circumstances surrounding
this case that the plaintiff has not commenced this action to protect his inter-
ests as a tax-payer, but that the real parties in interest are the persons now
using the ferry franchises, and consequently he has no right to call upon the
court for the exercise of its equity powers."    I find in the papers before me
much that casts suspicion upon the bona fides of the present action.    In say-
ing this, I feel it my duty to add that I do not mean to impute a bad motive
to the plaintiff's attorney, who has been retained, I suppose, because his good
name lends respectability to any cause of which he is the advocate.    The facts
stated in the complaint constitute a good cause of action, and, if the plaintiff
were really seeking redress, would warrant the granting of an injunction;
but, as I have said, it is my duty to know that the plaintiff is honestly pro-
tecting his interests as a tax-payer, and that he is not resorting to this action

for the purpose of forwarding the operations of the persons who compose the Electric Construction Company. From the papers before me it is obvious that this action was well under way before the plaintiff had any connection with it. Somebody had sufficient interest in the subject to employ an attorney and to prepare many of the papers before the name of Mr. Kimball anywhere appears. The original plaintiff was, as I find, William B. Lynch. Exactly when Mr. Lynch lost his interest in protecting the property of the city from waste, I am unable to discover, but it must have been about the 7th or 8th of June. Though some proceedings were taken in the name of Lynch after the 8th of June, the summons bearing the name of Kimball is dated June 7, 1888. The complaint is all in type-writing, except the name of the plaintiff, which was evidently inserted with the pen after the complaint had been completed. The conclusion seems to be a fair one that, having got the papers all ready, the real party in interest was compelled to look around for a plaintiff. From the fact that the complaint was not verified until the 12th of June, it is not unreasonable to infer that the search was a long and tedious one. These circumstances are all inconsistent with the idea that the plaintiff began this action. He was brought into it by somebody who had a private purpose to accomplish, and who, for his own advantage, is attempting to pervert the statute of 1887 to a use never contemplated by the legislature. At the argument it was charged that the Electric Construction Company was the real promoter of this litigation. For some purpose of its own, it repeatedly applied for leave to withdraw its bid. The affidavits relied on to sustain the injunction are chiefly those made by its vice-president. Except the statement of the vice-president, there is nothing to show that the company possesses any capital, or that it is able to carry out any contract. It has no plant, and the statements contained in its bid, that "its existing central station is in Thirty-Fourth street, between Ninth and Tenth avenues," is not proven to be true. I am satisfied that Mr. Lynch, for reasons satisfactory to himself, declined to act as plaintiff, and that Mr. Kimball was then induced to act as his substitute. The action lacks the essential element of sincerity, and for that reason, in the exercise of a judicial discretion, I dissolve the preliminary injunction, and deny the motion to continue the injunction, with $10 costs.