AtkiNSON, J.,
delivered the opinion of the court:
The plaintiff in this cause sues to recover $500 from the United States, deposited b3r his attorney in plaintiff’s name with the Commissioner of Indian Affairs, Interior Department, as a guaranty for a bid made by him through his said attorney, under, an advertisement of said Indian Office for bids to lease- districts numbered 1, 2, and 3 of the Fort Ber-thold Indian Reservation situate in the State of North Dakota, in which advertisement it was provided that all leases made thereunder should be subject to the approval of the Secretary of the Interior before the same should become effective. ■
*527 The, two questions raised in the case are: (1) Had the-plaintiff the right to withdraw his bid after all the bids had been received and opened; and (2) shall the Commissioner-of Indian Affairs be required to return to the bidder the deposit made by him as an evidence of good faith in competitive bidding under the provisions of the advertisement for bids, provided he was lawfully entitled to withdraw his said bid ?
I. It is elementary that a proposal or bid to convert it into a contract must be accepted by the other party, and the assent of the parties to the terms thereof must be mutual. It is an undeniable principle of the law of contracts that an offer of a bargain by one person to another imposes no obligation upon the former until it is accepted by the latter according to the terms in which the offer is made. Until the terms of the agreement have received the assent of both parties the negotiation is open and imposes no obligation on either; and since an offer or bid is not a contract it necessarily follows that the party making it may withdraw it at any time before acceptance.
II. The other question involved in this case is more difficult of determination, viz: What are the rights of bidders-as to the withdrawal of their bids after they have been j opened and they have been informed thereof, but before they ' have been accepted ?
The agents of the Government stand upon a different footing from private individuals in the matter of advertising for the letting of contracts in behalf of the United States. They have no discretion. They must accept the lowest or Í the highest responsible bid, or reject all and readvertise. ¡ Private individuals are not required thus to act. Hence it is apparent that government agents should be allowed a reasonable time after the opening of bids before they are allowed to be withdrawn, so they, can be afforded opportunities- to ascertain whether collusion or fraud had been ' perpetrated against the United States by the parties engaged in the bidding. It is also apparent that if the rule of allowing immediate withdrawals after the results of the bidding are made known, frauds innumerable could be perpetrated against the United States, and thus public justice would be *528 greatly hampered. Experience in advertising for proposals for contracts has rendered it necessary for the different departments of the Government to require a deposit of 5 to 10 per cent of the approximate amount involved as an evidence of good faith and honest dealing on the part of the bidders, said deposit to be forfeited if the rules of the departments are not complied with; otherwise such deposits will be returned to the bidders. It is an easy matter for a bidder to shun responsibility if he has underestimated or overestimated in his proposal, provided he is allowed to withdraw his bid and with it recover the amount of his deposit.
Cases relating to the return of deposits made as earnests of good faith by parties malting proposals for government contracts are exceedingly few. While, as we have above stated, the law is well settled as to the necessity of an acceptance and an ultimate agreement by and between both parties to the same in order to constitute a contract binding-on both, it is by no means well determined as to the disposition of the deposits which have been made in cases where bidders see fit to withdraw their proposals before they have been accepted and contractual relations have been established.
In Moxley's case (2 Met. Ky., 309) the court held that—
“A proposition or offer imposes no obligation unless it be accepted by the party to whom it is made; and the acceptance must, where no time is fixed by the proposer, be within a reasonable time, to be determined by the nature of the case.”
The court then cites Parsons on Contracts (sec. 482), which reads as follows:
“ It may be said that, whether the offer be made for ,a time certain or not, the intention or understanding of the parties is to govern. If the proposer fixes a time, he expresses his intention, and the other party knows precisely what it is. If no definite time is stated, then the inquiry as to a reasonable time resolves itself into an inquiry as to what time it is rational to suppose that the parties contemplated; and the law will decide this to be that time which as rational men they ought to have understood each other to have had in mind.”
*529 In the case of Kimball v. Hewitt, mayor, et al. (2 N. Y. Supp., 697) it was held that—
“ Under a state statute requiring municipal contracts to be let to the lowest bidder, and forfeiting to the city the certified check deposited with such bid in case the bidder refuses to sign the contract within five days, the city officers have no right to allow a bidder to withdraw his bid, even before the bids are opened.”
And on page 698 the court further said:
“ Had the defendants been acting in their own private business, there is no doubt that they could have permitted the offer made by the Electric Construction Company to be Avithdrawn; but, acting as public officers, they could not lawfully forego the right that the city had acquired to insist that the company should either carry out its offer or forfeit the amount that it had deposited as security.”
While in the above case the state statute required the forfeiture of the deposit, in the case at bar the regulations of the Indian Office, approved by the Secretary of the Interior, required it. Paragraph 616 of said regulations reads as follows:
“ Bids for grazing privileges will ordinarily be requested, and the privilege of grazing each particular district or range awarded to the highest bidder. Each bidder should be required to deposit Avith his bid a certified check or draft on some solvent national bank or United States depository in the vicinity of his place of business, made payable to the order of the Commissioner of 'Indian Affairs, for at least 5 per cent of the amount of the proposal, which check or draft shall be forfeited to the United States in case any bidder or bidders receiving an award shall fail to promptly execute the lease for grazing purposes; otherwise to be returned to the bidder.”
One of the purposes of this regulation is to prevent the Avithdrawal of bids when the results of the biddings are ( made known and before it is possible under government rules j and regulations to accept or reject a bid. It is evident from/ the language used in this regulation that its main purpose is to protect the Government from conspiracies which might; occur among bidders for government contracts, and in no sense was it intended to punish them. Hence the necessity, as we have already stated, that in cases of this character, *530 agents of the Government should be allowed a reasonable time in which to pass upon proposals before they can be withdrawn by the parties who made them.
In the case of Haldane v. United States (69 Fed. Rep., 819), where it was provided in the advertisement for bids that bids could not be withdrawn for sixty days, the court, on page 823, in considering the matter of reasonable time for acceptance, decided as follows:
“ It was suggested in the charge of the learned trial judge, but not decided, that possibly the Government had the right to accept the defendant’s bid even after the lapse of sixty days; that the stipulation in the circular that the bid should not be withdrawn for sixty days was not tantamount to a statement that it should not be subject to acceptance after that time. We can not assent to that view. In the absence of the clause not to withdraw the bid for sixty days, it would only have remained open for a reasonable time. By the insertion of the clause in question, the parties to the transaction, in effect, determined how long ought to be allowed for acceptance, and, by inference at least, they agreed that more than sixty days was an unreasonable period for the proposal to remain open and unaccepted.”
In the case at bar an error in transmitting the bid by telegraph is claimed by plaintiff, and, as set out in Finding IV, the Commissioner of Indian Affairs requested him to furnish evidence of the correctness of this claim; but plaintiff, standing upon his common-law right to withdraw his bid at any time before its acceptance, fáiled or refused to furnish such evidence, and thereupon the Indian Office, with the approval of the Secretary of the Interior, declared his deposit of $500 forfeited to the Fort Berthold Indians, under the ju’ovisions of the advertisement for proposals.
In the case of Wilson v. Mayor of Baltimore (Atlantic Reporter, 774) sealed proposals for furnishing city supplies were advertised for. The bids provided that “ the full name and address of a surety must be written on the proposal, and each proposal must be accompanied by a certified check for $500. * ‘ * * If the successful bidder enter into contract, with bond, without delay, the check will be returned, as will those of the unsuccessful bidders.” The contract was awarded, but the bidder was unable to furnish a surety, and the contract was let to another. The court held “ that the *531 deposit- was a penalty, and could be enforced only to the extent of the actual loss resulting from a failure to complete the contract.” In the case at bar the' actual loss to the United States was $11,535. (Hinton v. Sparks, Law Reports, C. P. C., vol. 3, 161.)
In the case of Beaver, Butts, et al. v. The Trustees for the Institution of the Blind (19 Ohio St. Reps., 97), under an act of the Ohio legislature “ prescribing the duties of directors, trustees, etc., to whom is confided the duty of devising and superintending the erection of any state institution,” the said trustees of the institution for the blind proceeded regularly in all respects in accordance with law to advertise for sealed proposals for the furnishing of labor and materials for the erection of a state institution for the blind. It was held by the court that “ in such cases, after the day limited for the filing of proposals, and after the same have been opened, the trustees are invested with no discretion to permit an amendment of any such proposal on account of any alleged mistake therein, unless the fact of such mistake and the requisite data for correcting the same are apparent on the face of the proposals.” (Kelsey v. United States, 1 C. Cls. R., 374; Spearin v. Endicott et al., No. 25318 Equity, Sup. Ct:, D. C.; Kerr on Fraud and Mistake, 419, 420.)
But does the case at bar come -within the rule laid down in the cases quoted? It is one of that class of cases where an agent of a State or the United States is necessarily restricted by law and whose acts must be supervised by others higher in rank before a definite conclusion can be reached, which necessarily requires reasonable time. When a government official has proceeded in a regular and established way in the reception of bids and the awarding of contracts, defaulting bidders, within reasonable limits, should be held strictly liable for the forfeiture of penalties. If this is not required,1 the Government might be placed at the mercy of those who, by cooperating together, could render proposals for contracts / a mere farce. *
It is not infrequent that mistakes are made in transcrib- i ing and transmitting bids preliminary to the letting of con-: tracts by the Government, and the courts, when mistakes! are prima facie, will protect bidders. But public policy de-’ mands that great care be taken by government officials, when *532 mistakes are alleged, to prevent collusion and fraud by parties making proposals. While we do not-say that collusion or fraud is established in this case, yet it is a fact that the Government lost $11,535 by the failure of plaintiff to comply with the terms of his proposal, which fact, considered in connection with his refusal to furnish the Indian Office with proof of the alleged mistake in transmitting his bid, justifies the court in the belief that there was some reason, not favorable to the plaintiff, which prompted him not to furnish evidence of his good faith. We, therefore, decide that the Secretary of the Interior was justified in declaring the draft of $500 forfeited to the United States, and the petition is accordingly dismissed.
Judgment for the defendants.