LittletoN, Judge,
delivered the opinion:
Plaintiff admits that it was unable to furnish butter that would meet the specifications; that is, it could not furnish butter known to have been made from pasteurized milk and to have been subjected to the required heat treatments in the process of manufacture which would minimize the bacteria and insure the prolonged keeping quality of the product. It was unable to furnish butter subject to inspection at the creamery at time of manufacture. It contends that the specification requirement for creamery inspection was not of the essence of the agreement; that it was for the protection of the Government and did not go to the heart of the agreement; that plaintiff’s obligation was to supply butter of a particular grade and quality and that the tests prescribed were merely of the methods that would afford a basis for a decision as to whether the butter offered met these requirements and were not conclusive as to the decision in that behalf.
It further contends that it was at all times prepared to supply butter that would meet the requirements as to quality, grade, and kind, and that it was therefore never in default with respect to its undertakings and, accordingly, was not *135 chargeable with any excess costs incurred by the Government in purchasing other butter.
The plaintiff further insists that if factory inspection be held to be of the essence of its undertaking and that it was therefore in default when it failed to furnish butter that had been inspected at the factory, the defendant did not in several particulars buy other butter under circumstances and conditions that would entitle it to charge the plaintiff with any excess cost incurred in that connection. We can not agree with the contentions of the plaintiff. It agreed to furnish butter of a specified kind in accordance with the Marine- Corps specifications of June 1, 1926, subject to the inspection specified therein. It was unable to furnish the butter in accordance with its bid and the specifications. The defendant had a right to insist upon inspection at the creamery in order to make certain that the butter conformed to the required specification. The plaintiff offered to furnish butter that had not been inspected and had not been pasteurized in the making, and, consequently, did not possess the insured keeping quality which the Government required under its advertising. This offer was rejected by the defendant. Without unreasonable delay, the defendant readver-tised the contract and awarded the same to the lowest responsible bidder whose bid conformed to the specifications. The butter was duly furnished and the excess cost thereof to the defendant over the cost at which the plaintiff had agreed to furnish it was $4,603.26. The plaintiff is liable to the defendant for this amount.
It is well established that the measure of damages for a breach of an obligation to deliver goods is the sum which will place the owner in as good position as he would have been if the obligation had been fulfilled. When it was found that the plaintiff could not fulfill its bid, the defendant acted in good faith and with diligence to procure the article contracted for in the condition required by the plaintiff’s undertaking. The parties contemplated that the measure of recovery should be the excess cost incurred by repurchase in the event of the plaintiff’s default, and the latter agreed in its bid to execute a contract containing such a provision. *136 Garfielde v. United States, 93 U. S. 242; Scott v. United States, 44 C. Cls. 524; Purcell Envelope Co. v. United States, 51 C. Cls. 211.
The fact that the formal contract was not executed by the plaintiff does not prevent the United States from recovering the damages sustained. United States v. New York & Porto Rico Steamship Co., 239 U. S. 88; Ackerlind v. United States, 240 U. S. 531; American Smelting & Refining Co. v. United States, 259 U. S. 75.
Judgment will be entered in favor of the defendant on its counterclaim for $1,556.61. It is so ordered.
Whaley, Judge; Williams, Judge; GeeeN, Judge; and Booth, Chief Justice, concur.