## DISTRICT OF COLUMBIA v. SINGLETON et al.

### No. 1030.

Municipal Court of Appeals for the District of Columbia.

Argued May 7, 1951.

Decided June 12, 1951.

Chester H. Gray, Principal Asst. Corporation Counsel, Washington, D. C., with whom Vernon E. West, Corporation Counsel, and Henry E. Wixon, Asst. Corporation Counsel, Washington, D. C., were on the brief, for appellant.

DeWitt S. Hyde, Washington, D. C., with whom Arthur J. Hilland and James R. Murphy, Washington, D. C., were on the brief, for appellees.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

Appellees submitted a proposal or bid to the District of Columbia for furnishing certain supplies for a total price of $7,530.15. The District notified appellees that their proposal was accepted and sent them contract forms for execution. Appellees refused to sign the contract and notified the District that they could not comply with the bid.[1] The District then purchased the supplies from another source at a cost of $813.61 in excess of appellees' bid, and thereafter brought this action to recover that amount from appellees.

Appellees moved to dismiss the complaint relying upon the following provision of section 2 of the Act of December 20, 1944: "That the Commissioners of the District of Columbia are hereby authorized to appoint such number of employees of the District of Columbia as they shall consider advisable as contracting officers, who, under the direction of the said Commissioners, may exercise any powers with respect to making and entering into contracts on behalf of said District of Columbia and administering said contracts that are now vested by law in the said Commissioners, except as herein otherwise provided; but no contract of $1,000 [2] or more entered into on behalf of said District of Columbia by any contracting officer appointed pursuant to this Act shall be binding upon said District of Columbia, or give rise to any claim or demand against said District of Columbia, until approved by the Commissioners of the District of Columbia, or a majority of them, sitting

---

1. The reason for the refusal was that appellees, a New York firm, learned,, after acceptance of the bid, that a local representative of the manufacturer of the product had exclusive sales rights here.

2. Increased to $3,000 by Act of August 16, 1949, Public Law 230, 81st Cong., 1st Sess., 63 Stat. 607.

**336**

as a Board." Code 1940, Supp. VII, § 1–245.

The District conceded that appellees' bid was not submitted to or approved by the Commissioners. Appellees contended that without such approval there was, by reason of the above quoted statute, no valid contract between them and the District and consequently no liability on their part to the District. They emphasized this point by the fact that the proposal or bid forms supplied by the District contained an express reference to the statute and the fact that the acceptance of the bid was in the following form: "Approved, subject to execution of a formal contract by the successful bidder and the Purchasing Officer, D. C. (Contracting Officer) and approval by the Commissioners, D. C., or a majority of them sitting as a Board, as provided by law. Contract forms from the Contract Section will follow. Purchase orders will be issued immediately following approval of contract."

The trial court in a written memorandum agreed with appellees' contention and ordered the complaint dismissed. In its memorandum the court, in part, said:

"In the present case, it is undisputed that the statute required the written contract be approved by the Commissioners. Therefore, until that approval was given, there could be no valid contract. The formal written contract was never signed and executed by defendants. The statute specifically provided that 'no contract of $1,000.00 or more * * * shall be binding upon said District of Columbia. * * * until approved by the Commissioners * * *.' This approval was never obtained. It is frankly admitted that the defendants, even though they would have been willing to have gone through with their proposal, could have had no claim or redress against the District of Columbia, if the Commissioners in the exercise of their powers had rejected their bid. It would appear reasonable that the general principles and rules of contract law are as applicable to government contracts as to contracts between private corporations or individuals. Mutuality of burden and consideration is well recognized. If a contract is not bind-

ing on one party until a certain future condition is met, then it should not be binding on the other party. In other words, there is no contract until there has been an offer *and* an acceptance—not a conditional acceptance, which purports to bind *only* the offeror.

\* \* \* \* \* \* \*

"Accordingly, the Court is of the opinion that under the admitted facts of the present case, there was no valid contract executed by the defendants with the plaintiff but only the submission of an offer (bid) which was conditionally but not finally accepted by the plaintiff and that, therefore, there was no breach on the part of the defendants on which the plaintiff is entitled to seek damages in these proceedings."

The District has appealed and its position is stated in its brief as follows:

"The approval required of the Commissioners of a contract involving $1,000 or more is not an essential prerequisite for the making of the contract. The contracting officer possesses that power. The approval required of the Commissioners of a contract made by a contracting officer is a limitation not upon the power of the contracting officer to contract, but upon the right of the other party to the contract to enforce it against the District of Columbia.

\* \* \* \* \* \* \*

"It [the statute] does not affect the validity of the contract. It merely prevents the enforcement of the contract against the District of Columbia without approval of the Commissioners. Therein lies the vice of the Trial Court's conclusion."

In support of its position the District relies on the interpretation placed on a former federal statute, Rev.Stat. § 3744, 41 U.S.C.A. § 16. That statute required all contracts made by the Secretaries of War, Navy and Interior, or by officers under them appointed to make such contracts, to be reduced to writing and signed by the contracting parties. In Clark v. United States, 95 U.S. 539, 24 L.Ed. 518, and many other cases, it was held that the statute made it unlawful for contracting officers to make contracts in any other way than

by writing signed by the parties, and was in effect a prohibition against any other mode of making contracts; and that a contract not complying with the statute could not be enforced against the United States.

However, when the United States brought an action on a contract not made in compliance with the statute, the District Court held that the statute did not bar a recovery by the Government, saying that the purpose of the statute was "not to relieve the contractor of his default, but to protect the government". United States v. New York & P. R. S. S. Co., D.C., S.D. N.Y., 197 F. 995, 1001. On appeal this ruling was reversed, the Circuit Court of Appeals saying: "We cannot believe that it was the purpose of Congress to permit the government to enforce, as against the citizen, an oral agreement or one partly evidenced by writing, but which violates all the requirements of the statute, and refuse all relief when a citizen seeks to enforce a similar contract against the government. It cannot be that the validity of a contract depends upon whether the party of the first part or the second part is seeking to enforce it." New York & P. R. S. S. Co. v. United States, 2 Cir., 206 F. 443, 445.

The case eventually reached the Supreme Court which reversed the Circuit Court of Appeals, saying: "There is no principle of mutuality applicable to a case like this, any more than there necessarily is in a statute requiring a writing signed by the party sought to be charged. The United States needs the protection of publicity, form, regularity of returns and affidavit (citing statutes) in order to prevent possible frauds upon it by officers. A private person needs no such protection against a written undertaking signed by himself. The duty is imposed upon the officers of the government, not upon him. We see no reason for extending the implication of the act beyond the evil that it seeks to prevent." United States v.

New York & P. R. S. S. Co., 239 U.S. 88, 36 S.Ct. 41, 42, 60 L.Ed. 161.

The effect of that ruling was: "The contract is not unlawful in the preliminary stage, or even void in a strict sense, but simply not to be enforced against the United States." Ackerlind v. United States, 240 U.S. 531, 36 S.Ct. 438, 439, 60 L.Ed. 783. In the case of a defaulting bidder, very analogous to the instant case, the Court of claims held: "The fact that the formal contract was not executed by the plaintiff [the bidder] does not prevent the United States from recovering damages sustained." Waters, Inc., v. United States, 75 Ct.Cl. 126, 136.

Our question is whether the statute here involved should, by analogy to the federal statute, be construed to make a contract over the specified limit, which lacks the Commissioners' approval, unenforceable against the District but binding on the other party. We think the statute should be so construed for the following reasons. The requirement that contracts over a certain amount be approved by the Commissioners was clearly enacted for the benefit of the District and not for parties contracting with the District. The statute does not prohibit contracting officers from making contracts above the specified amount; indeed the statute recognizes their authority to make such contracts by providing that such contracts be approved by the Commissioners. The statute does not declare that contracts requiring the Commissioners' approval shall be void or of no effect without such approval.[3] It states that without such approval the contract shall not be binding on the District or give rise to a claim or demand against the District. It does not declare such a contract not binding on the other party. A party contracting with the District is charged with knowledge of this statute and in this instance, and probably in all cases, is given express notice of it by the proposal form. The bidder is therefore in a position, when notified of acceptance

---

3. The succeeding paragraph of the statute declares that any contract entered into by a contracting officer in which such officer or any Commissioner is personally interested shall be void.

of his bid, to insist that no work will be done or goods delivered by him until a formal contract is executed and approved by the Commissioners, and probably he has the right to demand that the Commissioners approve or disapprove within a reasonable time; but we do not think that the statute intended that a successful bidder may refuse to execute a contract, thus preventing approval by the Commissioners, and thereby relieve himself of the consequences of his default.

Reversed.