## AMERICAN SMELTING AND REFINING COMPANY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 221. Argued April 25, 1922.—Decided May 15, 1922.

1. A contract made during war for war material to be delivered by a specified date, which was as early as delivery would be practicable under the circumstances, is within the exception of Rev. Stats., § 3709, dispensing with advertising for purchases when public exigencies require immediate delivery. P. 78.

2. The formalities of Rev. Stats. § 3709, are to protect the United States, not the seller. P. 78.

3. The fact that an offer and an acceptance by correspondence are both made in express contemplation of a more formal document to follow does not prevent their constituting a contract. P. 78.

4. At a time when a price for copper to the Government had been fixed under Act of August 29, 1916, c. 418, § 2, 39 Stat. 649, claimant received from the War Department a proposal in writing for delivery of a stated amount at that price before a certain date under shipping orders to be supplied by the Department and accepted it in writing at the Department's request and upon its advice that no payment could be made without such acceptance. *Held:*

(a) A contract, and not a requisition under the National Defense Act of June 3, 1916, c. 134, § 120, 39 Stat. 213, which authorized, in addition to purchase, the obtaining of material by compulsory orders, for a fair and just compensation. P. 78.

(b) The claimant, having completed deliveries after alleged delays in shipping orders and after the government price had been increased under the Act of August 29, 1916, *supra*, could not, in respect of such deliveries, claim freedom from the contract because

of such delays and recover the difference between the new and contract prices upon the theory that the deliveries were compulsory and called, for a fair compensation under the National Defense Act and the Fifth Amendment. P. 79.

(c) Damages for the Government's delay in performing, could not be had upon a petition framed on the theory of a compulsory requisition. P. 79.

(d) The case was not within the Act of March 2, 1919, c. 94, 40 Stat. 1272, authorizing relief to contractors furnishing supplies under agreements not executed in the manner provided by law. P. 79.

55 Ct. Clms. 466, affirmed.

APPEAL from a judgment of the Court of Claims dismissing appellant's petition on demurrer.

Mr. William B. King and Mr. George A. King, v ith whom Mr. Charles Earl and Mr. George R. Shields were on the brief, for appellant.

Mr. William C. Herron, with whom Mr. Solicitor General Beck was on the brief, for the United States.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a claim for $512,515.50, being the price of 20,500,620 pounds of copper at twenty-six cents a pound less payments received at twenty-three and a half cents. The petition was dismissed by the Court of Claims on demurrer. The facts alleged are as follows. The Government had some correspondence with the United Metals Selling Company ending in an order or proposal for 30,000 metric tons of copper for the French Government to be delivered on or before June 1, 1918. To this the Company replied on March 26, 1918, that the Copper Producers Committee had divided the handling of copper and had given the export business to the American Smelting & Refining Company. The letter requested that the order be changed to apply to the last named company and concluded " they tell us that it will quite fit in with their operations to handle this present order along

with the other shipments." Thereupon, on March 28, 1918, a letter was written by the Ordnance Department to the American Smelting & Refining Company, " to advise you that the Procurement Division is prepared to procure from you 30,000 metric tons (66,138,000 pounds) of copper at a price of 23½c. per pound net, f. o. b. New York basis. Deliveries are to be completed on or before June 1, 1918 "; shipping instructions to be taken up with the Supply Division, Ordnance Department; with further particulars not material and ending, " Your acceptance of this letter is requested pending issuance of formal contract which will go forward in a few days." The representative of the claimant seems to have delayed an answer in the hope of adjusting one or two details but on April 11, wrote " We have your favor March 28th  .  .  . and take pleasure in accepting your letter as above pending issuance of formal contract which we hope to receive in the near future." The copper except the 20,500,620 pounds, was delivered before July 2, 1918, has been paid for and no question is raised about it. But it was practically impossible to deliver this last amount until after that date and no shipping orders for it were received until a later time. It was delivered finally and the claim for the advanced price is based upon the facts and arguments that we shall state.

At the time when the order was accepted the Price-Fixing Committee of the War Industries Board, an agency of the Council of National Defence, had fixed the price of copper at 23½ cents per pound f. o. b. New York, under the Act of August 29, 1916, c. 418, § 2, 39 Stat. 619, 649, and the authority of the President. On July 2, 1918, the price was advanced to 26 cents per pound. The National Defence Act of June 3, 1916, c. 134, § 120, 39 Stat. 166, 213, had authorized the President in time of war " in addition to the present authorized methods of purchase or procurement, to place an order " for material required;

made compliance with such orders obligatory under a
penalty, and gave them precedence. The compensation
paid was to be fair and just. The position of the claim-
ant is that, although the language of contract was used,
it was yielding to the requirements of the statute and is
entitled to the fair price that the statute promised. The
fair price, it contends, for copper delivered after the
change of July 2, is twenty-six cents, because the delay is
alleged to have been due to the failure of the Government
to send shipping orders and to the fact that further de-
liveries were made impossible for the time by the Gov-
ernment's appropriating all the copper available to other
uses. It also argues that there was no valid contract,
since the agreement was not made by advertising and
was not within the exception when the public exigencies
require immediate delivery. Rev. Stats., § 3709.

We may lay the latter objection on one side. There
can be no question that the war created a public exigency
and it would be going far to deny that the contract was
for a delivery as immediate as was practicable for the
subject-matter. Moreover the statutory requirements
were for the protection of the United States, not of the
seller. *United States* v. *New York & Porto Rico S. S.
Co.*, 239 U. S. 88. Of course the expressed contempla-
tion of a more formal document did not prevent the let-
ters from having the effect that otherwise they would
have had. The only serious argument is the supposed
duress. But that can not prevail. It may be true that
the claimant was yielding to the statute in a general way
and did not discriminate between what it was required to
yield and what it could reserve. But if it had desired to
stand upon its legal rights it should have saved the ques-
tion of the price. It did not do so, but on the contrary
so far as appears was willing to contract and was content
in the main with what was offered. As was pointed out
by the Court of Claims, the acceptance was sent because

the claimant was advised by the Government that no payment could be made until the claimant had accepted in writing the Government's proposal, whereas no acceptance was necessary if the order was a compulsory requisition.  We are of opinion that the claimant must stand upon the letters of March 28 and April 11.

The claimant argues that under its contract it was set free by the delay in shipping orders, and that although it did not refuse to proceed on that account, the omission should be credited to patriotism not to a waiver of legal rights.  But whatever the motives for its conduct the claimant kept the contract on foot.  It even is said to have requested to be allowed to continue deliveries after June 1.  Its claim if any must be for damages on the ground that the United States did not perform its part of the contract on time.  Such a claim is not necessarily waived by completing performance.  *St. Louis Hay & Grain Co.* v. *United States,* 191 U. S. 159, 164.  But the petition is framed on the theory that there was no contract but a requisition under the above mentioned Act of June 3, 1916, c. 134, § 120, and that the claimant is entitled to just compensation by that section and by the Fifth Amendment to the Constitution.  This we hold to be a mistake.  Whether any claim for damages could be urged is not before us; the petition discloses grounds for doubt at least.  Our judgment excludes any remedy under the Act of March 2, 1919, c. 94, 40 Stat. 1272, providing for supplies and services furnished under agreements not executed in the manner prescribed by law.  We have said nothing about repeated requests that the claimant should sign a formal contract, its refusals, and its ultimate signing under protest, because these facts in no way modify the relation of the parties under the contract by letters already made.

*Judgment affirmed.*