GRAham, Judge,
delivered the opinion of the court:
This is an action to recover payment for bituminous coal claimed to have been requisitioned by the Navy under separate orders at two different times. The petition sets up two causes of action. The first cause of action grows out of an order designated N-69, which is dated the 10th of August, 1917, and covered shipments of coal beginning the latter part of June and terminating the 30th of September, 1917. The second cause of action grows out of two orders by the Navy Department, with modifications and extensions thereof Imown as N-6123 and N-6157, each dated the 12th day of June, 1919, for deliveries of coal from the 1st of July, 1919, *621 to the 31st of December, 1919. These last two orders were for different grades of coal, the conditions and terms of them are the same except as to the price, and originally they were the same as to price. For the purposes of this discussion only one of them will be alluded to, namely, N-6123, it being understood that what is said applies as well to N-6157. The order of August 10,1917, in the first cause of action was for 92,400 tons of coal at a price named of $2.335 per gross ton, f. o. b. mines. The plaintiff began deliveries on the 27th of June, 1917, and concluded its deliveries on September 30, 1917. On August 21, 1917, the President issued a proclamation regulating the sale of bituminous coal. The price that covered the run of mine of the plaintiff’s coal under this proclamation was $2 per net ton, equivalent to $2.24 per gross ton; and thereafter, about the 1st of September, 1917, the Navy Department informed the plaintiff .that it should adjust its billing from the price previously named in the order of $2.335 per gross ton to $2.24 per gross ton. On the 4th of September it instructed the plaintiff to continue billing at $2.335, but again, about September 17, adjusted the price to $2.24, and plaintiff delivered the coal and was paid at the provisional prices as adjusted from time to time. It is suing here to recover the difference between the sum so received and such other sum as would make just compensation for the value of the coal. The theory on which the suit is brought is that the order N-69 was a requisitioning of the coal.
The first cause of action arises under paragraph .(b) of the order, which in substance provides that a price would be tentatively fixed. If the price was accepted it would make the contract; if it was not accepted, then the plaintiff, upon delivery of the coal, would be paid the price fixed and such additional sum as would make up the difference between the price fixed and the value of the coal, being the fair market juice of the same at the time and place of delivery fixed in the order. In the first cause of action the plaintiff refused to accept the price but delivered the coal. It was paid the price and it is entitled to a further recovery in an amount which will make up the difference between the amount paid and the fair market value of the coal at the *622 time and place of delivery fixed by the order, which, according to the Findings of Fact, is $115,923.86. Federal Sugar Refining Co. v. United States, ante, p. 184.
The second cause of action presents a somewhat different situation. It is under subparagraph (A) of the order; and the orders in both of these causes of action, it might be stated, are in terms and conditions the same except that the first cause of action is under subparagraph (B) of the order and the second under subparagraph (A). Subparagraph (A) provides:
“ The price herein stated has been determined as just compensation for material to be delivered or service to be rendered. If satisfactory to you, payment will be made accordingly and acceptance of this price will be considered as constituting a formal release of all claims arising under this order.”
The order in another section provides:
“Prices herein stated will be subject to change due to change in wage scale or freight rate as may in general be applicable to the field in question and operative on the coal called for hereunder.”
Two orders were placed, as stated, under this second cause of action, on the 12th of June, 1919, for coal to be delivered between July 1, 1919, and the 31st of December, 1919. The price named in these orders, $3,364 per gross ton, was accepted as satisfactory by the plaintiff, and the plaintiff was paid on the basis of this accepted price for coal delivered under these orders between July 1, 1919, and November 1, 1919. For coal delivered after the 1st of November the price named in the order was increased by the Secretary of the Navy on a showing by the plaintiff that there had been an increase in wages, the amount allowed being the amount of such claimed increase. And for coal delivered from the 1st of November to the 1st of April the plaintiff was paid at this increased price. On the 25th of November the two original orders, under an order of the Secretary of the Navy, were extended. The period for delivery and the amounts to be delivered within that period were not named in the order, it being provided that they would be subject to future arrangements between the par *623 ■ties.. This .modified and. extension.. order, provided that it should be á part of the two original orders. No price was named in it, and it is to be assumed that the price named in the original orders was to remain the same. It was accepted as satisfactory by the plaintiff. Thereafter it was arranged between the parties for the .delivery of coal from the 1st of April, 1920, to the 31st of March, 1921, and the coal embraced in the second cause of action was delivered during' that period. ■ * : ‘
The Secretary of the Navy, on the'lst of June, 1920, on a showing by the plaintiff that it had had* another increase in wages beginning the ,1st of April, again increased the price ■effective-the Tst of. April.. This monease was cumulative, being an increase on the increase already allowed. Later, on the 18th of August, the Secretary Reviewed the whole ■situation, and' it would, seem that in, order to cover all claims, those.of others as..well.as the\plaintiff — for the Navy was getting ■ coat from: other - sources — fixed- the price for all coal delivered after’1‘the51st1 ofMApril, 1920,. at $4.25. This was to cover all increases in wages after the 1st of April, 1920. As far as the plaintiff is concerned it does not appear that it had .any increase,.ip wages ¡from the 1st of April to the 16th ■o.f August, /SO- that /jUjdei?', the • contract this price of $4.25 ■covered..the original', price naipLed..i¡nvt¿!¡i@ orders plus all increases in,wages up to the JCfilr pf;August; and therefore -on coal delivered between the 1st of April and the 16th of August, 1920, the plaintiff should be paid on the basis of $4.25 per ton. .On the 16th of August-the plaintiff had .another raise of wages, which apparently, was not known to the Secretary of the Navy on the 18th pf August, at the time he named the price $4.25, and was afterwards, in September following, brought to his attention, and upon a formal claim for this increase by the plaintiff in November, 1920, the Secretary of the .Navy increased the price to •the extent of this claim for increase, effective for all coal delivered on and after the 16th of August.' As it does not appear that the plaintiff had any raise in’wage scale after August 16, 1920, the plaintiff should be paid'fbf all coal delivered after that date up to the 31st of March, 19*21, at the rate of $4.468 per ton for coal delivered under Order *624 N — 6157, and $4.5732 per ton for coal delivered under Order N-6123, the prices fixed by the department. At the said prices of $4.25 per ton prior to August 16, 1920, and $4,468 and $4.5732 per ton after August 16, the amount due the plaintiff for all the coal delivered to the Government after April 1, 1920, was $335,079.61. From this should be deducted the $251,309.70 which was paid the plaintiff, leaving the amount which the plaintiff is entitled to recover under the second cause of action $83,769.91.
The plaintiff in its petition and proof has sought a recovery upon the theory that these orders of the Secretary of the Navy were in the nature of requisitions or commandeering proceedings. This position is not tenable, for the order on its face contemplated an acceptance. If the order was a compulsory requisition, no acceptance was necessary. American Smelting & Refining Co. v. United States, 259 U. S. 75, 79. In this last case it was also held “ that an order and acceptance is a contract enforcible in this court.” The original orders in this case with the price named, under the second cause of action, were accepted a,s satisfactory, subject to increases by reason of increase in wages and freight rates. There is nothing in the order to indicate, if the order was accepted as satisfactory, that the price was to be fixed upon any other basis than the price named, plus increase in wages or freight rates as might occur' from time to time during the period of delivery. The very language of the order directed to the plaintiff states “that an order is placed with you under conditions stated in sub-paragraph a (subparagraph & is eliminated and is not a part of this agreement) to furnish and deliver material and services needed by the Navy as in sheets attached.” The sheets attached called for 85,000 tons of coal at a price of $3,364 per gross ton f. o. b. mines. Said subparagraph (A) provides that the price stated had been determined upon as “just compensation for the material to be delivered or service to be rendered,” and that “ if satisfactory to you payment will be made accordingly, and an acceptance of this price vill be considered as constituting a formal release of all claims arising under this order.” The plaintiff indorsed *625 on this order: “ The above is accepted subject to the conditions of subparagraph (A) above. The price therein stated and fixed as being reasonable is satisfactory.”
It thereafter made claims for increases in price named in the order, by reason of increases in wages as contemplated by the order, and in each case it was allowed the exact amount of the increase in price requested. It applied in May, 1920, for an increase on account of raise of wages April 1, and on June 1 following, the Secretary of the Navy granted this increase, effective April 1. The communication of the Secretary to the plaintiff fixing this new price, in accordance with the request of the plaintiff, was accepted as shown by an entry thereon in the language quoted above, b 'ing the same wording used in accepting the original order. This was after the delivery of the coal had begun. The plaintiff continued to deliver coal under this unqualified acceptance of the price until the 16th of August. Thereafter,, on a .showing of an increase in wages, the price was again raised to the amount requested, effective the 16th of August.
This request for an increase, as of the 16th of August,, was not made until November, there having been large de-liveri; s of coal between these dates. The action of the Secretary of the Navy in placing these orders, as stated in the orders purported to be by authority of the national defense act of June 3, 1916, the food control act of August 10, 1911, known as the Lever Act, and the Navy appropriation act of July 1, 1918, and the .sections of each of these acts relied upon were quoted in the order. It seems clear from the form of the order that the Secretary of the Navy ivas proceeding according to the provisions of the acts of June 3, 1916, and July 1, 1918. Each of these acts confers upon the President authority, through the head of a department, “to place an order,” and while these acts both contain a provision that the order shall be obligatory and that the Government shall be given precedence, these latter provisions were not compelling, did not amount to dures.s, and did not prevent the plaintiff from discriminating between what it was required to yield and what it could reserve. See American Smelting & Refining Co. v. United States, supra. *626 It could have stood upon its legal rights and saved the question of price. (Ibid.)
The act of July 1; 1918, upon which the plaintiff relies for its theóry of a requisition was similar in its apparent purpose to the national'defense act. It also began by conferring authority upon the President “ to place an order,” provided that the order should be obligatory and that preference should be given to it. It further provided that in case of refusal to comply with the order the President was authorized to take possession of the plaintiff’s factory and operate it. It will be seen that the act clearly contemplated, first, an’ effort to establish’ a contractual relation by the placing of an order, and its acceptance. If the order was accepted, there was an end of the matter and no occasion would exist for a-taking or a requisition of the property, as the acceptance of the order made a contract:' American Smelting & Refining Co. v. United States, supra. The taking of the property or material was predicated upon a refusal to accept the order, and only upon such "refusal. It was the refusal that justified the requisition or the taking. A mere order to deliver property where the order has not been accepted and the property not delivered is not a taking upon -which an implied contract could be based so as to give this court jurisdiction. United States Bedding Co. v. United States, 266 U. S. 491. Under the facts of the instant case there was no taking of the plaintiff’s property for which it could recover as and for a taking. If there were a' doubt as to whether in this case there was a taking or a contract it would have to be held to be a contract rather than a taking through the exercise of the harsh right of eminent domain. Federal Sugar Refining Co. v. United States, supra.
In the view of the conclusion reached, there is no occasion to consider whether the Secretary of the Navy had authority under the act of July 1, 1918, to requisition or take coal or take possession of a coal mine, or the further question, whether the Secretary could requisition material which was not in possession, at the time, of the person to whom the order was addressed, or not in existence in the form ordered; i. e., had not been produced.
*627 Hat, Judge,; -Downey, Judge; Booth, Judge, and Campbell, Chief Justice, concur.
With the amended findings was filed the following
MEMORANDUM BY THE COURT
The plaintiff has filed a motion for a new trial and requested an'amendment to the findings of fact heretofore made. The requested amendments have been considered and .some amendments to the findings made.
The court has concluded as to the coal delivered between .the 29th of September, 1920, and the 31st of March, 1921, to allow thé plaintiff its fair market value, thus changing .and increasing the allowance made under the judgment heretofore entered," as shown by the amended findings. This ■conclusion is reached after further consideration of plaintiff’s letter of September 29, 1920, in which it refused to .accept the last price fixed by the Secretary of the Navy in his order of August 18, 1920. It would seem, under the terms of sub-paragraph A of the contract, that having refused to accept the price named it was entitled to the fair market value of the coal delivered under the contract after the said September 29, 1920.
On the question of interest the court adheres to its view that the statute (42 Stat., p. 316, sec. 1324) forbids the allowance of interest upon an express contract where the payment of interest is not stipulated for in the contract.
The necessary changes have been made in the'findings to • conform to the foregoing views. Judgment should be entered for the plaintiff in the sum of $279,120.33, and it is .so ordered.