GRAham, Judge,
delivered the opinion of the court:
The plaintiff was awarded a contract on June 20, 1918, for the manufacture of 60,000 pairs of drawers, 40 per cent worsted and 60 per cent cotton. Prior to executing said contract, being unable to make arrangements for the purchase of the wool needed for the manufacture of the underwear, it applied to the chief of the knit-goods branch of the War Department for assistance in procuring the needed worsted yarn and stated that it would take three months to .fill the order and 10,000 pounds a month would be needed while it was knitting. Thereupon the representative of the knit-goods branch communicated with a third party by telephone and arranged for the furnishing of the 30,000 pounds of yarn to plaintiff, to be paid for by the latter.
The next day a representative of the plaintiff returned .and stated that he would only need 25,000 pounds of the yarn. He was told that the order would not be counter.manded and that he would have to take the 30,000 pounds. It was the understanding of the Government’s representative at the time the order for the yarn was given that plaintiff needed that amount of yarn. When he was protesting that he did not need the 30,000 pounds, he was told that that much had been ordered and that it would upset the arrangements of the office to go over it again and that it was thought it would have no need to regret the order because there would be a following contract.
*665 Thereafter, on July 2, plaintiff entered into a written contract for the manufacture of said drawers, purchased the 30,000 pounds of wool as arranged, manufactured and delivered the drawers, and was paid for them at the contract price. It received no further contracts, nor does it appear that it applied for any. At the termination of the work it had a surplus of 5,109 pounds of worsted yarn on hand. This it tried to induce the department’s representative to take off its hands, but did not succeed. It then disposed of the surplus yarn at a private sale for $9,925.41, which represented a net loss of $4,412.09 as compared with the purchase price. It does not appear what the the market price was at the time of this sale, nor is there satisfactory proof that offers were made by anyone but the purchaser. The price was the adjustment price at which plaintiff believed the Quartermaster’s Department was settling some contracts' at the time.
The material for the manufacture of these garments was three-fifths cotton and two-fifths wool, and on the basis of the 30,000 pounds of wool yarn purchased by plaintiff it purchased 45,000 pounds of cotton, and at the termination of the contract had 8,644 pounds of cotton yarn unused,, which it sold in the same way as it sold the surplus woolen yarn, at a loss of $1,807.33 as against the purchase price.. The plaintiff is suing to recover $6,279.82, being the aggregate of the claimed losses on the sale of the surplus woolen and cotton yarn.
Plaintiff’s contention seems to be that it purchased the surplus yarn because it was told by the Government’s representative to do it, which creates no liability upon the-part of the Government. It could have refused to purchase the yarn or enter into the subsequent contract. American Smelting Co. v. United States, 259 U. S. 75, 78. Its other contention is that it bought the yarn under a promise that it would be given an opportunity to use the surplus in filling-contracts that would follow.
It is enough to say that a procurement officer who it is-claimed made this promise had no authority to do so (Donner Steel Co. v. United States, ante, p. 209; Austern v. United States, 60 C. Cls. 315; Burney Axe v. United States, *666 id. 493; Jacob Reed’s Sons v. United States, id. 97; Wright v. United States, id. 519), and the court has found the fact. The Government ordered for the plaintiff, at its request and for its assistance, the amount of goods which it understood the plaintiff to state it needed. The yarn was supplied by a third party and was to be paid for by the plaintiff. It purchased the goods- knowing that it would have a surplus on its hands, taking the chance of getting contracts on which it could use the surplus. It did not get additional contracts and did not seek or apply for them. It is apparent that it suffered a loss which it could have avoided and for which the Government is not responsible.
The subsequent written contract in the performance of which the yarn was to be and was used contains no statement or provision with regard to indemnification in case there was a surplus, no agreement to take the surplus material off its hands, and no suggestion that another contract would be awarded. If the plaintiff desired to protect itself in the matter of this surplus, the necessary provision for this purpose should have been inserted in the contract. There is no suggestion that it was ever the intention of the parties that it should be covered into the contract or that it was omitted therefrom for any reason which would justify the court in making it part thereof.
The petition should be dismissed, and it is so ordered.
Hat, Judge; DowNet, Judge; Booth, Judge; and Campbell, Chief Justice, concur.