### WHITE OAK COAL CO. v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. October 19, 1926.)

No. 2488.

**1. War ⬤⇒14.**

Government's requisition of coal under Lever Act, § 10 (Comp. St. § 3115⅛ii), with acceptance thereof, constituted valid and binding contract to extent that it was performed.

**2. War ⬤⇒14.**

Coal dealer, having expressed satisfaction with offer of government on requisition for coal under Lever Act, § 10 (Comp. St. § 3115⅛ii), is estopped thereafter from bringing suit for value of coal.

**3. War ⬤⇒14.**

Coal dealer's letter, after requisition of coal by government under Lever Act, § 10 (Comp. St. § 3115⅛ii), signifying acceptance under protest that price was unfair, *held* not notice that it refused price tendered.

**4. Eminent domain ⬤⇒164.**

Ordinarily acceptance of amount awarded for property taken for public use constitutes waiver of objections to its taking.

**5. Compromise and settlement ⬤⇒5(2).**

One accepting payment tendered in full settlement is precluded from further recovery.

**6. War ⬤⇒14.**

Under Lever Act, § 10 (Comp. St. § 3115⅛ii), owner of property requisitioned thereby, after acceptance of payment in full settlement, may not recover any further amount.

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; George W. McClintic, Judge.

Action by the White Oak Coal Company against the United States. Judgment for the United States, and plaintiff brings error. Affirmed.

A. C. Burnham, of Boston, Mass., and Robert S. Spilman, of Charleston, W. Va. (Charles W. Dillon and Dillon, Nuckolls & Mahan, all of Fayetteville, W. Va., Price, Smith & Spilman, of Charleston, W. Va., and Blodgett, Jones, Burnham & Bingham, of Boston, Mass., on the brief), for plaintiff in error.

B. J. Pettigrew, Asst. U. S. Atty., of Charleston, W. Va. (Elliott Northcott, U. S. Atty., of Huntington, W. Va., Alfred A. Wheat, Howard W. Ameli, and George Dyson, Sp. Asst. Attys. Gen., on the brief), for the United States.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

PARKER, Circuit Judge. This action was instituted, under section 10 of the Lever Act (Comp. St. § 3115⅛ii), to recover the difference between the price paid and the alleged value of 210,631.375 tons of coal delivered to the United States. At the first trial plaintiff recovered judgment, but upon writ of error a new trial was granted for error in refusing to direct a verdict for defendant. United States v. White Oak Coal Co. (C. C. A.) 5 F.(2d) 439. Upon the second trial verdict was directed for defendant, and the only point presented by plaintiff's assignments of error is the correctness of this ruling. This writ of error might be disposed of on the ground that the former decision is the law of the case, but for plaintiff's contention that certain evidence introduced upon the second trial takes the case out of the principles announced in the former decision, particularly as to coal delivered after September 17, 1920. A proper understanding of this contention requires that we state briefly the facts established upon the second trial.

On June 12, 1919, a requisition order for 226,800 tons of coal to be delivered between July 1, 1919, and December 31, 1919, was addressed to plaintiff by the Navy Department, under the Lever Act of August 10, 1917, 40 Stat. 276, 279, section 10 of which provides:

"That the President is authorized, from time to time, to requisition foods, feeds, fuels, and other supplies necessary to the support of the army or the maintenance of the navy, or any other public use connected with the common defense, and to requisition, or otherwise provide, storage facilities for such supplies; and he shall ascertain and pay a just compensation therefor. If the compensation so determined be not satisfactory to the person entitled to receive the same, such person shall be paid seventy-five per centum of the amount so determined by the President, and shall be entitled to sue the United States to recover such further sum as, added to said seventy-five per centum, will make up such amount as will be just compensation for such necessaries or storage space, and jurisdiction is hereby conferred on the United States District Courts to hear and determine all such controversies."

This requisition, the material provisions of which are set forth in full in the former opinion, stated that an order was placed with defendant for the coal; that compliance with the order was obligatory and should take precedence over all commercial orders or contracts; that a price of $3.08 per ton had been determined as just compensation; that, if this price was satisfactory to plaintiff, payment would be made accordingly, and that acceptance thereof would be considered as constituting a formal release of all claims arising under the order; that, if not satisfactory, only 75 per cent. of the designated amount would be paid and further recourse might be had by suit against the United States; that plaintiff should indicate below on the order whether the price stated was satisfactory or unsatisfactory, and, if unsatisfactory, should write a separate letter of comment and qualification. Beneath the signature of the Paymaster General of the Navy was printed a blank acceptance of the order, so worded that in signing same the plaintiff might indicate whether the price designated was satisfactory or unsatisfactory, the exact language thereof being as follows:

"The above order is accepted subject to the conditions in subparagraph (a) above. The price therein stated and fixed as being reasonable is satisfactory."

The officers of plaintiff consulted about the order, and on August 1, 1919, accepted it, certifying the price as satisfactory. The acceptance was forwarded to the Navy Department with a letter of inclosure, set forth in the former opinion, stating that plaintiff did not waive any of the legal rights which it had in the matter, but not expressing dissatisfaction with the price or declining to accept same in settlement. Plaintiff's sales manager, over defendant's objection, testified that by this letter he meant to object to the price offered in the requisition order, but admitted that he had studied the language of the order and understood it, and signed the acceptance as satisfactory. As deliveries of coal were made under the order, invoices were rendered by plaintiff for the full price as fixed therein, which were certified to be "correct and just." These invoices were paid in full, and the payments were received and retained by plaintiff without protest. On November 25, 1919, there was a modification of the original order extending it beyond the date fixed, which was accepted by plaintiff.

One of the provisions of the order was

that the price fixed would be subject to change on account of change in wages, and, under this provision, plaintiff, on January 12, 1920, applied for an increase of 33.6 cents per ton, filing an affidavit which stated that a certain wage increase "when applied to the total cost of mining and handling coal results in an added cost of thirty-three and six-tenths (33.6) cents per ton of 2,240 pounds, and will be added *to the contract price* shown on U. S. Navy contract No. N–6121 dated June 12, 1919, and the extension of *this contract* as referred to in Secretary Daniels' letter to the White Oak Coal Company dated November 25, 1919." (Italics ours.) Pursuant to this application, a modification of the original order was made on May 24, 1920, granting an increase of 32.7 cents per ton on coal delivered subsequent to December 1, 1919, and fixing the price thereof at $3.407 per ton. In accepting this modification, plaintiff again signed a certificate that the price fixed was satisfactory.

In April, 1920, plaintiff submitted a bid to the Navy Department offering to supply 100,000 tons of coal through the ensuing year at $4 per net ton or $4.38 per gross ton. About the 1st of July, 1920, its president, in a conference with Secretary Daniels and Commander Hilton, again offered to furnish coal in accordance with this bid. The bid was not accepted, but on August 18, 1920, a modification of the original order, fixing a price of $4 per ton on coal delivered after April 1, 1920, was sent to plaintiff. The modifying order stated that the price fixed therein embraced all wage increases, although it manifestly did not include a wage increase of August 16th. On September 13th plaintiff had not accepted the proposed modification and had not indicated whether the price therein fixed was satisfactory or not, and on that date the Paymaster General of the Navy addressed a letter to plaintiff, calling attention to plaintiff's failure to reply to the notice of modification of order, requesting that the matter be given attention and stating:

"As will be noted from the navy order, the amount to be paid is contingent upon the acceptability of the price by the supplier. Unless early announcement as to your decision in the matter is therefore received, it will be necessary to suspend payments."

To this letter plaintiff replied under date of September 17th, stating that it had signed and was returning under protest the modification order for two reasons: First, because the price was unfair, as it did not represent the true value of the coal; and, second, because the allocation of tonnage was unfair,

as plaintiff was called on for more coal than it should be expected to furnish. With this letter was inclosed the modification order, the acceptance of which plaintiff had signed, certifying the price therein fixed as satisfactory.

On September 30, 1920, less than two weeks after writing the letter last mentioned, plaintiff wrote the Paymaster General, inclosing an affidavit as a basis for increase in price, and stating that same covered the additional amount which plaintiff felt should be charged to the "navy contract"; that plaintiff trusted that it would meet with approval, and advice would be sent out to the various supply officers to pass plaintiff's invoices with this additional amount charged. The inclosed affidavit certified to a wage increase of $1.50 per day on August 16th and stated:

"This increase when applied to the total cost of mining and handling coal results in an additional added cost of thirty-three and six-tenths (33.6) cents per gross ton of 2,240 pounds, *or a total cost of 4.336 per gross ton of 2,240 pounds, which will apply against the contract and extension thereof as referred to in Secretary Daniels' letter to the White Oak Coal Company, dated November 25, 1919, as* provided for in paragraph three (3) of specifications covering deliveries on schedules 3989, 3990 and 3995." (Italics ours.)

At the request of the Paymaster General, plaintiff, on November 13, 1920, submitted affidavits covering additional facts with reference to the wage increase, writing at the same time that "the total increase due" was 36.04 cents per ton. On November 19, 1920, a modification order was entered fixing the price at $4.3604 for coal delivered after August 16th. This was accepted, and plaintiff signed without protest the written acceptance, stating that the price fixed was satisfactory. As a result of this modification, plaintiff received the increased price on all deliveries made subsequent to August 16th, so that, on all deliveries made after the modification order of August 18th and the protesting letter of September 17th, plaintiff received a price which it agreed to as satisfactory and which it accepted without protest. After the protesting letter, plaintiff continued to submit invoices for the full amount of the price fixed and to receive and retain payments for the full amount thereof.

The requisition order was canceled April 11, 1921. Plaintiff had delivered under it 210,631.375 tons of coal, of which 40,436.679 tons were delivered after September 17, 1920. There was evidence that the market price of the coal was considerably above the price paid

by the government. No suit was instituted until September 27, 1921, more than five months after the deliveries of coal were ended, and more than two years after they were commenced. At no time during the period when deliveries were being made and plaintiff was collecting the full amount of the price fixed, did it decline to receive the full amount or give notice of any desire to receive only 75 per cent. thereof, and recover the remainder of the value at law.

We see nothing in this evidence to take the case out of the principles so well stated by the late Judge Woods, in the former opinion of this court. The specific provisions of formal written instruments executed between the parties cannot be defeated by vague general reservations in collateral correspondence, nor contradicted by oral testimony as to what one of the parties understood. There was no evidence of duress or compulsion. On the contrary, the evidence is that. plaintiff was given an option, clearly stated, either to accept the price as fixed by the government or to accept 75 per cent. thereof and assert its own valuation in the courts. With full understanding of its rights, plaintiff not only signified its satisfaction with the price as fixed, but also sent invoices to the government for the full amount thereof. It accepted and retained payment for the full amount, although it was expressly stipulated in the face of the order itself, that such acceptance would constitute a formal release of all claims arising thereunder. It sought and received increases in price of the coal delivered, on the ground that it was entitled to them under the terms of the contract because of wage increases. At no time was it suggested that the price fixed by the government would not be accepted, or that plaintiff proposed to avail itself of its right to accept 75 per cent. of the price as fixed and sue for the excess value of the coal delivered.

[1] The requisition order addressed to plaintiff was a notice that, in taking the coal specified, the government would buy it at the price fixed, if plaintiff were willing to sell at that price, but that, if plaintiff were not willing to sell, only 75 per cent. of the price fixed would be paid, which payment, however, would be without prejudice to the right of plaintiff to establish its value at law. Plaintiff agreed to sell, and accepted the offer of the government, expressing its satisfaction with the price offered. This offer and acceptance constituted a contract, which was certainly valid and binding upon the parties to the extent that it was performed. American Smelting & Refining Co. v. U. S., 259 U. S. 75, 42 S. Ct. 420,

66 L. Ed. 833; Willard, Sutherland & Co. v. U. S., 262 U. S. 489, 43 S. Ct. 592, 67 L. Ed. 1086; Alcock & Co. v. U. S., 61 Ct. Cl. 312, decided Dec. 7, 1925.

[2] Under the law, as well as under the offer of the government, plaintiff was entitled to the full amount of the price fixed, only in the event it was accepted in full satisfaction. It had the right to decline the government's offer and sue for the value of the property taken, if it desired to do so, but in that event it was entitled, not to the full amount of the price fixed, but only 75 per cent. thereof. It obtained the full price by accepting the offer, certifying the price fixed as satisfactory, and rendering invoices, not for 75 per cent., but for the full price, which it accepted without protest. Even if the contract feature of the case be ignored, plaintiff cannot recover. It voluntarily elected to pursue one of two inconsistent remedies as a means of obtaining compensation for its property. Having obtained benefits thereby which it could not otherwise have obtained, it is estopped from pursuing the other remedy. 9 R. C. L. p. 960; Fowler v. Bowery Savings Bank, 113 N. Y. 450, 21 N. E. 172, 4 L. R. A. 145, 10 Am. St. Rep. 479, and note; U. S. v. Child & Co., 79 U. S. (12 Wall.) 232, 20 L. Ed. 360; U. S. v. Adams, 74 U. S. (7 Wall.) 464, 19 L. Ed. 249; American Smelting & Refining Co. v. U. S., supra.

And we see no distinction in principle as to the coal delivered after September 17, 1920. It is true that on that date plaintiff, in returning its acceptance of the modification order of August 18th, wrote a letter stating that it was signing the acceptance under protest, and that the price was unfair and did not represent the true value of the coal. But plaintiff did not refuse to accept the price offered, nor did it give notice that it would take 75 per cent. thereof and establish its right to additional compensation at law. On the contrary, it agreed to accept the price as offered, in order that it might receive settlements on that basis. Plaintiff's dissatisfaction with the price may have been due to the fact that the increase granted was not sufficient to cover the wage increase of August 16th. But, however that may be, it is unquestioned that on September 30, 1920, plaintiff submitted an affidavit and requested an increase of price on account of this wage increase, and that, when the requested increase was granted on November 19th, extending to all deliveries since August 16, 1920, plaintiff, without protest accepted the modification and the price of $4.3604 per ton as satisfactory.

[3] The letter of September 17, 1920, must be construed in connection with plaintiff's acceptance of the modification order, which accompanied it, and in the light of its subsequent conduct in asking and accepting, without protest, an increase of the price to $4.3604, in sending invoices, not for 75 per cent. of the price fixed, but for the entire price, and in accepting and retaining, without protest, payments for the full amount thereof. When so construed, it is clear that this letter was not intended as notice to the government that plaintiff intended to stand on its rights and refuse the price tendered, but that it was merely a protest made in the hope of obtaining a better price for the coal, for which plaintiff intended to collect the full price fixed at all events. The plaintiff could not "blow hot and cold." It could not seek and accept the price offered in full settlement, and at the same time deny that there was a settlement. The full price fixed could be obtained only by plaintiff's accepting it as satisfactory, and either the letter and acceptance of September 17, 1920, were intended as an acceptance of the price offered or as a refusal thereof with notice of intention to stand on legal rights. They could not be both. The subsequent conduct and dealings of plaintiff show beyond question that they were intended as an acceptance.

But, whatever be the construction placed upon the letter and acceptance of September 17th, there can be no question that plaintiff is bound by its acceptance of the modification order of November 19th, which gave an increased price on all deliveries of coal made after the protest. It is said that the application for the increased price and the acceptance of the modification order were things done to obtain the price increase to which plaintiff was entitled by the terms of the order; but this is an immaterial distinction. An increased price meant increased compensation, if not increased profit, to plaintiff, even though granted under the contract; and the fact that it was so granted is no reason why it should not have been satisfactory to plaintiff, or that plaintiff's solemn certificate to that effect should be disregarded. In this connection it should be remembered that, in its affidavit filed September 30th, asking for the increase, plaintiff represented that the increase asked would result in a total cost of $4.336 per ton to the government.

[4-6] A sufficient reason for denying additional compensation for coal delivered after the letter of September 17th, however, is found in the fact that plaintiff continued to render invoices for the full amount of the price fixed, and to accept without protest payments made on that basis, in the face of a notice that such acceptance would constitute a formal release of all claims. The acceptance of the amount awarded for property taken for public use ordinarily constitutes a waiver of objections to its taking (Winslow v. B. & O. R. Co., 208 U. S. 59, 28 S. Ct. 190, 52 L. Ed. 388), and it is elementary that one who accepts a payment tendered in full settlement is precluded from further recovery. There is nothing in the Lever Act which abrogates these well-established rules. Under its provisions, the owner of property taken may accept three-fourths of the value thereof as determined by the President, without prejudice to his rights; but it does not authorize further recovery where the owner has sought and had paid to him the full value so determined, or where he has accepted a payment tendered after notice that its acceptance would constitute full settlement.

We are cited to Houston Coal Co. v. U. S., 262 U. S. 361, 43 S. Ct. 612, 67 L. Ed. 1028, as holding that acceptance of the full price fixed does not preclude further recovery, but we do not consider the doctrine of that case to be applicable here. The point there was one of jurisdiction, and the holding was that the mere fact that the government had paid the full price fixed for coal, which was accepted by the plaintiff under protest and with express reservation of the right to demand more, did not oust the District Court of jurisdiction of the suit under section 10 of the Lever Act. It was not a decision upon the merits, and lends no support to the contention that plaintiff, after accepting the price fixed as satisfactory, seeking and receiving increases in price, rendering invoices for the full amount of the price and accepting and retaining payments for the full amount, can recover excess value because of general letters reserving indefinite rights or expressing dissatisfaction with the price as unfair.

Contention is made that because of the letter of September 13, 1920 of the Paymaster General to plaintiff, the acceptance of September 17th was given under coercion or duress. Even if this were true, it would not avoid the effect of plaintiff's having later sought and accepted an increased price covering the deliveries in question, or of plaintiff's having rendered invoices for the full price fixed by the President and having accepted settlement on that basis. But we see nothing to justify the contention as to duress. The letter of September 13th merely stated that the amount to be paid was contingent upon

the acceptability of the price to the plaintiff, and that unless plaintiff would announce its decision it would be necessary to suspend payments. It is clear that in making payments it was necessary for the government to know whether the price paid was acceptable or not, so as to determine whether to make payment of the full price fixed or of only 75 per cent. thereof. The letter did not threaten to withhold payments unless plaintiff should accept the price as satisfactory; and plaintiff, in the requisition order itself, had been advised of its right to decline the price offered and to accept 75 per cent thereof and establish the value at law. See American Smelting Co. v. U. S., supra.

Plaintiff places great reliance upon two cases, Freund v. U. S., 260 U. S. 60, 43 S. Ct. 70, 67 L. Ed. 131, and Swift & Co. v. U. S., 111 U. S. 22, 4 S. Ct. 244, 28 L. Ed. 341. But as we understand these cases, neither of them has any application to the case at bar. The Freund Case held that "contractors who were encouraged by agents of the Post Office Department to enter into a mail carriage contract and give a heavy bond, without notice of the department's purpose to substitute a more onerous service under color of the contract, but not within its terms, and who performed the new service, under protest, rather than incur risk to themselves and their bondsmen of throwing up the contract," would not be held to have acquiesced in the change. In the case at bar there was no element of illegality, unfairness, coercion, or threats on the part of officials of the government. On the contrary, they proceeded strictly in accordance with the law, and, instead of acting oppressively or unfairly, notified plaintiff of its right to refuse the price offered and of its rights upon such refusal.

Nor do we think that the doctrine of the Swift Case has any application here. That case decided that settlements made by a purchaser of revenue stamps did not preclude him from asserting his statutory right to a certain commission on stamps purchased by him, where he was given no choice, but the only alternative was to submit to an illegal exaction or discontinue his business. In the case at bar, plaintiff was faced with no such alternative. On the contrary, it was expressly advised of its right to establish the value of its property at law, if unwilling to accept what the President had determined as fair compensation, and was offered three-fourths of this amount pending the determination of its value.

We have given careful consideration to the other authorities cited by the able counsel representing plaintiff, and to the arguments which they have advanced, but we are convinced that the judgment of the District Court was correct, and same is accordingly affirmed.

Affirmed.