**GARY AIRCRAFT CORPORATION,**
**Plaintiff,**

**v.**

**UNITED STATES of America et al.,**
**Defendants**
**and**
**Spartan Aviation, Inc., Intervenor.**

**Civ. No. SA–72–CA–135.**

United States District Court,
W. D. Texas,
San Antonio Division.

May 8, 1972.

---

Solomon Casseb, Jr., San Antonio, Tex., for plaintiff.

John Davidson, for Spartan Aviation Corp., San Antonio, Tex., intervenor.

William S. Sessions, U. S. Atty., by Hugh P. Shovlin, Asst. U. S. Atty., San Antonio, Tex., for defendants.

## MEMORANDUM OPINION

JOHN H. WOOD, Jr., District Judge.

In this case the Court, on April 7, 1972, temporarily restrained the Defendants from proceeding with the resurvey of Spartan Aviation, Inc., Intervenor, to ascertain whether it was qualified to perform a contract about to be awarded by the Air Force. Thereafter, on April 17, 1972 this matter was before the Court on Plaintiff's Motion for Preliminary Injunction, and Defendants' and Intervenor's Motion to Dismiss the complaint. Following the hearing, the Court, by Judgment, dated April 17, 1972, denied Plaintiff's motion and granted Defendants' and Intervenor's motion.

### I. FACTS

On July 15, 1971, Defendant, Robert C. Seamans, Jr., Secretary of the Air Force, acting through the United States Air Force, Headquarters San Antonio Air Material Area, Kelly Air Force Base, Texas, issued Request for Proposal (RFP) F 41608–71–4929 for the procurement of certain overhaul services for the R-3350 aircraft engine and its components. This engine is a large reciprocating type used by the United States Air Force in certain military aircraft identified as C–119, C–121 and A–1 aircraft, and by various allied countries under military assistance programs promoted by the United States. Aircraft utilizing this type engine are presently in operation in Southeast Asia.

This RFP contemplated the award of a fixed price contract for a three year period. In order to provide sufficient "lead-in" time, the Air Force desired to select the successful offeror and award

the contract by October 31, 1971. Actual engine overhaul was to commence on or about May 31, 1972.

In response to the RFP two offers were received by the Air Force: one, from Plaintiff, Gary Aircraft Corporation, the current contractor overhauling these engines, and the other from Spartan. Thereafter, each proposal was evaluated in accordance with criteria established in the RFP and negotiations were conducted with both. 10 U.S.C. § 2304; 32 C.F.R. § 3.805. Following negotiations final fixed price proposals were submitted by each competitor.

At this juncture of the procurement, the Government's contracting officer set out to determine whether the lowest apparent offeror met minimum standards of responsibility so as to be considered predictably capable of successfully performing the contractual requirements. 32 C.F.R. § 1.900 et seq. Although the Air Force has not divulged the amount of either Gary's or Spartan's offer (32 C.F.R. § 3.507–2), all parties to these proceedings have agreed that Spartan submitted the apparent low price by an amount which is sufficiently significant.

Diverse sources of information are screened by the contracting officer to determine the responsibility of a prospective contractor. These include, to name a few, credit reports, agency records, customer, supplier and banking reports, financial data, current and past production records, and on-site inspection of the prospective contractor's plant. See 32 C.F.R. § 1.905–3. Utilization of *currently* valid source information with relation to the *date* of contract award is one of the prime requisites for conducting a thorough responsibility investigation. 32 C.F.R. §§ 1.905–1(b), 1.905–2, and 1.902.

One important tool utilized by Department of Defense agencies in evaluating a prospective contractor's capability to perform under the terms of a proposed contract is the so-called pre-award survey. 32 C.F.R. §§ 1.905–4, 1.904–1. Detailed procedures are established within the Armed Services Procurement Regulation (ASPR) for the conduct of this type survey. 32 C.F.R. § 30.7. Ordinarily, an organization within the Department of Defense, the Defense Contract Administration Services (DCAS) conducts such surveys and furnishes a formal report to the military procuring official. The survey report is designed to set forth details concerning the investigation of the prospective contractor's plant, records, management, and production capability, and recommends to the contracting official whether an award should be made on the basis of the contractor's responsibility. This report is advisory and hence is not binding upon the procuring official. Jordan Affidavit, paragraph 5.

Under the terms of the applicable regulations a pre-award survey was conducted at both Plaintiff's and Spartan's plant. The Spartan survey was conducted from September 27 through 30, 1971, and the Gary survey from October 4 through 6, 1971. Jordan Affidavit, paragraph 6. Thereafter, pre-award survey reports were formally prepared by the authorized DCAS office located in San Antonio, Texas, and forwarded through its chief official, Defendant, Lt. Colonel H. J. Lehr, to the contracting officer, Defendant, Tommy B. Jordan. The pre-award survey report pertaining to Spartan, dated October 8, 1971, was received by Mr. Jordan on October 18, 1971. This report recommended that no award be made to Spartan because of deficiencies found by the survey team in the following areas:

a. Lack of an adequate quality control system;

b. Inadequate past performance;

c. Inability to meet required schedule;

d. Inadequate property control system; and

e. Inadequate plant facilities and equipment.

Jordan Affidavit, paragraph 6.

Upon receipt of the survey report, the contracting officer examined it closely

and concluded that a resurvey of Spartan was required. It was Mr. Jordan's judgment that the Spartan survey report had been based in substantial part on evidence of Spartan's unsatisfactory performance on two separate Air Force engine overhaul contracts at the time the survey was conducted. Following completion of the survey, but before Mr. Jordan's receipt of it, Mr. Jordan ascertained that Spartan had corrected its difficulties and the Air Force had resumed acceptance of the engines under the other contracts. The acceptance of Spartan's production cast a sufficient doubt upon the current validity of the initial survey report. The contracting officer discussed the matter with his immediate superiors and, although his superiors decided that a resurvey was not necessary, Mr. Jordan has never waivered from his stated position. Thereafter, on November 15, 1972 while Mr. Jordan was absent from his official duties on annual leave, another duly authorized contracting official prepared a written determination that Spartan was nonresponsible. This determination was grounded on the unfavorable pre-award survey report.

By November 1, 1971, Spartan became apprehensive over the extensive delay in awarding this contract and, on that date, lodged a formal protest with the United States General Accounting Office (GAO) and generally complained that award to any other prospective contractor would be improper if Spartan was the lowest price offeror. Spartan submitted a detailed description of its protest on November 23, 1971, asserting, in the main, that the pre-award survey may have been unfairly conducted and based on erroneous evidence.

Pursuant to applicable regulations (32 C.F.R. § 2.407.8 and HQ USAF ASPR Supplement § 2–407.8) a report relative to this protest was prepared by the contracting officer and submitted through Air Force channels to the Headquarters U.S. Air Force, Washington, D.C., for final decision. Upon receipt at this highest Air Force level, the agency referred the matter to the GAO for its views and recommendations. For a discussion of the role of the GAO in bid protest cases see The Wheelabrator Corporation v. Chafee, D.C.Cir., 455 F.2d 1306 (1971). Thereafter, by letter (B–17455) dated March 22, 1972, the GAO upheld the Spartan protest to the extent that a current pre-award survey and reevaluation of Spartan's responsibility was recommended. Thereafter, the Department of the Air Force decided to comply with GAO's recommendation and directed that a resurvey of Spartan be conducted. Plaintiff, upon learning of the Air Force's decision filed this action for injunctive relief pursuant to 28 U.S.C., §§ 1331, 1340, 1346, 1361 and § 10 of the Administrative Procedure Act, 5 U.S.C., § 702 (1970). There has been no award of this proposed contract.

## II. THE MOTION TO DISMISS

The Government by way of response filed a Motion to Dismiss the complaint and advanced several reasons in support thereof, three of which will be discussed hereafter.

(1) Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 controls.

(2) The determination to conduct a second pre-award survey is committed to the discretion of the Air Force.

(3) The traditional equity standards for injunctive relief have not been met.

In large measure, Intervenor also asserted the same defenses.

(1) *Perkins*: To obtain relief by this Court, Plaintiff relies on Scanwell Laboratories, Inc. v. Shaffer, 137 U.S. App.D.C. 371, 424 F.2d 859 (1970) and its recent progeny of cases as developed in the District of Columbia Court of Appeals. The Wheelabrator Corporation v. Chafee, *supra*; Blackhawk Heating & Plumbing Co. v. Driver, 140 U.S. App.D.C. 31, 433 F.2d 1137 (1970); M. Steinthal & Co., Inc. v. Seamans, D.C. Cir., 455 F.2d 1289 (1970); Ballerina Pen Company v. Kunzig, 140 U.S.App. D.C. 98, 433 F.2d 1204 (1970); Keco In-

dustries, Inc. v. Laird, 318 F.Supp. 1361 (D.D.C.1970); Simpson Electric Company v. Seamans, 317 F.Supp. 684 (D. D.C.1970).

This Court after examination and close consideration of the *Scanwell* cases rejects them in light of Perkins v. Lukens Steel Company, 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940).

■ The clear and precise holding by the United States Supreme Court in *Perkins* is that prospective or potential bidders desirous of selling supplies or services to the Government do not have a direct legal interest in the Government's procurement process, and, hence, are not conferred with enforceable rights against the executive branch of the Government. The Supreme Court's ruling in Ass'n of Data Processing Service Organizations (ADAPSO) v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) has not changed the results of *Perkins*, but has reinforced the principle. *ADAPSO* makes it plain that for plaintiff to obtain the relief here sought, it must show that it has the requisite legal interest in the procurement process. Plaintiff has made no such showing. The Court in *ADAPSO* stated that (397 U.S. at 153, 90 S.Ct. at 830):

"[T]he 'legal interest' test goes to the merits. The question of standing is different. It concerns, apart from the 'case' or 'controversy' test, the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."

The Court added (397 U.S. at 158, 90 S.Ct. at 832):

"Whether anything in the Bank Service Corporation Act or the National Bank Act gives petitioners a 'legal interest' that protects them against violations of those Acts, and whether the actions of respondents did in fact violate either of those Acts, are questions which go to the merit and remains to be decided below."

Before this Court are a long line of holdings that the basic Government procurement statutes were "not intended to be a bestowal of litigable rights upon those desirous of selling to the Government . . .", *Perkins*, 310 U.S. at 127, 60 S.Ct. at 877; American Smelting & Refining Co. v. United States, 259 U.S. 75, 78, 42 S.Ct. 420, 66 L.Ed. 833; United States v. New York & Porto Rico S.S. Co., 239 U.S. 88, 36 S.Ct. 41, 60 L.Ed. 161; Goldberg v. Daniels, 231 U.S. 218, 34 S.Ct. 84, 58 L.Ed. 191; Edelman v. Federal Housing Administration, 382 F.2d 594, 597 (C.A.2) ("Bidding procedures are for the benefit of the public generally and confer no private rights on the bidder."); United States v. Gray Line Water Tours of Charleston, 311 F.2d 779 (C.A.4); O'Brien v. Carney, 6 F.Supp. 761 (D. Mass.1934); Champion Coated Paper Co. v. Joint Committee on Printing, 47 App.D.C. 141.

■ There is still today no evidence of a Congressional desire to depart from this long-standing view that the fundamental Government procurement statutes for general public contracts, 41 U.S. C. § 5 et seq., or for military procurements, 10 U.S.C. § 2301 et seq., were designed *not* to protect bidders but rather to protect the Government.

This circuit has recognized *Perkins* in its recent decision, Campbell Co. General Contractors, Inc. v. Lloyd Wood Construction Company, 446 F.2d 261 (C.A.5, 1971) and noted therein that *Perkins* has "never [been] judicially overruled or even mentioned by the Supreme Court in recent standing decisions."

The present case amply demonstrates why injunctive suits of this nature have not been countenanced traditionally, and should not be permitted here. The *Perkins* rule is neither obsolete nor legalistic, but is firmly rooted in meritorious practical considerations. Whether or not these considerations are still subsumed

under the traditional standing doctrine, they should and unless the Supreme Court overrules *Perkins*, must, be respected.

The fallacy of the *Scanwell* line of decisions which initially opened the District of Columbia's courtroom doors to all disgruntled bidders trying to upset awards became evident to that circuit in less than two years of this type of litigation when it denied plaintiff relief in *Wheelabrator, supra*, and stated (455 F.2d pp. 1311–1312):

"We need not consider in this case whether this analysis slams the door to the courthouse airtight, or whether it may be opened for a peek in limited cases,—e. g., where there is a claim that the court's general lack of review authority is subject to an exception because of extrinsic facts, such as fraud or bribery, that undercuts any bona fide defense that the matter rests solely within the Secretary's discretion."

The policy grounds expressed in *Perkins* are just as cogent today as they were when Mr. Justice Black's opinion was rendered (310 U.S. at 130, 60 S.Ct. at 878):

"Courts should not, where Congress has not done so, subject purchasing agencies of Government to the delays necessarily incident to judicial scrutiny at the instance of potential sellers, which would be contrary to traditional governmental practice and would create a new concept of judicial controversies. A like restraint applied to purchasing by private business would be widely condemned as an intolerable business handicap. It is, as both Congress and the courts have always recognized, essential to the even and expeditious functioning of Government that the administration of the purchasing machinery be unhampered."

This Court will deny, on the authority of *Perkins*, the injunction sought in this case and dismiss this action. See also Rubber Fabrication, Inc. v. Laird, N.D.W.Va. Civil Action No. C–71–11–C, July 16, 1971.

■ (2) *Agency discretion*: Notwithstanding the *Perkins* issue, Plaintiff's challenge of the decision by the contracting agency (e. g., the Air Force) to conduct a second pre-award survey is without merit on the basis that such a decision is committed to agency discretion and is unreviewable. The pertinent statutory provision governing contract award provides, *inter alia*, that:

"In all negotiated procurements . . . proposals, including price, shall be solicited from the maximum number of qualified sources consistent with the nature and requirements of the supplies or services to be procured, and written or oral discussions shall be conducted with all *responsible* offerors who submit proposals in a competitive range, *price, and other factors considered.* . . ." 10 U.S.C. § 2304(g) (Emphasis added)

Such broad and permissive terms are persuasive evidence that the administration of the statute is committed entirely to the discretionary judgment of the executive branch "without the intervention of the courts." Schilling v. Rogers, 363 U.S. 666, 674, 80 S.Ct. 1288, 1294, 4 L.Ed.2d 1478 (1960). It was recently held that a decision of the Agriculture Department to reject all bids on a contract for the sale of timber was committed to agency discretion and hence unreviewable. Hi-Ridge Lumber Company v. United States, 443 F.2d 452 (C.A.9, 1971). See Kendler v. Wirtz, 388 F.2d 381 (C.A.3, 1968).

■ (3) *Traditional equity standards for injunctive relief have not been met*: Finally, aside from the *Perkins* and the agency discretion issues, Plaintiff has plainly failed to establish any of the necessary prerequisites entitling it to extraordinary relief. All that the Air Force has decided to do is to conduct another pre-award survey and thereby either confirm or reject the validity of

the first survey. A full and fair examination of Spartan's responsibility is absolutely essential before there can be any award of this contract. Such action on the part of the Air Force does not create any degree of irreparable harm to Plaintiff, if indeed, there is any injury at all. Furthermore, Plaintiff's likelihood of success in proving the illegality or impropriety of a second pre-award survey is without foundation. Plaintiff is fearful that a second pre-award survey may reveal that the first was in error. Such potential error is the very core of concern to this Court. Unless the first survey was correct, i. e., factually supportable, it is the duty of the executive agency to either reject it or at the very least to reassess its worth. Certainly there is nothing irrational by such Government action nor is it in disregard of any regulation or statute. This Court has considered the strong public interest in permitting full and free competition (10 U.S.C. § 2304(g)) and when the public interest is balanced against the asserted need for an injunction the former convincingly outweighs the latter. Preventing a thorough and complete examination of a potential contractor's qualifications would eliminate a source from competition in this procurement and thereby force the award of a contract to another at a substantially higher price. To eliminate competition without affording it full and fair consideration is hardly in the public interest.

In the light of the foregoing, the Court finds that Plaintiff has been afforded a fair and complete opportunity to compete in this contract and that it is not prejudiced by the Government's conduct of a second pre-award survey to determine the responsibility of Spartan.

### III. CONCLUSION

For these reasons the Court denies Plaintiff's Motion for a Preliminary Injunction and Defendants and Intervenor are entitled to their Motion to Dismiss.