Booth, Judge,
delivered the opinion of the court:
The plaintiff firm was the owner of 440 acres of land upon which a canning plant was located in Harford County, Maryland. The business of the firm consisted in raising whole-grain Shoe Peg corn on about 200 acres of its own land, and then canning said product, as well as such quantities of corn as it procured from outside parties, for the market. The capacity of the plant was sufficient to absorb as a general proposition the yield of corn from about 500 acres of land. This locality was especially suited for the production of Shoe Peg corn, the soil and climate seemingly favorable to its cultivation and growth, and the members of the copartnership had spent years in developing the industry, expanding the market for the corn, thus giving it a well-established public favor and market value.
On October 6, 1917, 40 Stat. 352, Congress passed the following act:
“ Proving ground: For increasing facilities for the proof and test of ordnance material, including necessary buildings, construction, equipment, land, and damages and losses to persons, firms, and corporations, resulting from the procurement of the land for this purpose, and also the salaries and expenses of any agents appointed to assist in the procurement of said land or damages resulting from its taking, $7,000,000: Provided, That if the land and appurtenances and improvements attached thereto, as contemplated under the foregoing appropriation, can not be procured by pur *447 chase, then the President is hereby authorized and empowered to take over for the United States the immediate possession and title, including all easements, rights of way, riparian and other rights appurtenant thereto, or any land selected by him to be used for the carrying out of the purpose named in the aforesaid appropriation. That if said land and appurtenances and improvements shall be taken over as aforesaid, the United States shall make just compensation therefor, to be determined by the President, and if the amount thereof, so determined by the President, is unsatisfactory to the persons entitled to receive the same, such persons shall be paid seventy-five per centum of the amount so determined by the President and shall be entitled to sue the United States to recover such further sum, as, added to the said seventy-five per centum, will make up such amount as will be just compensation therefor, in the manner provided for by section twenty-four, paragraph twenty, and section one hundred and forty-five of the Judicial Code. Upon the taking over of said property by the President as aforesaid the title to all such property so taken over shall immediately vest in the United States: Provided further, That section three hundred and fifty-five of the Revised Stateutes of the United States shall not apply to the expenditures authorized hereunder.”
On October 16, 1917, the President issued a proclamation, 40 Stat. 1707, by the terms of which certain lands in Har-ford County, Maryland, comprising about 35,000 acres, were taken over for the establishment of what is known as the Aberdeen Proving Grounds. Plaintiff’s land and canning plant were within this area and were taken over. The taking over of such a vast area of land was a matter of grave local concern, especially to the owners thereof. The President, in order to ari’ive at just compensation to all the persons whose property had been thus taken, appointed a commission to go upon the land, hear testimony, and otherwise acquaint themselves with what would, in their estimation, amount to just compensation in each individual’s case.
The commission so appointed made its report with reference to the property here involved, and the President fixed just compensation to the owners at $76,000. This amount the plaintiff accepted. Suit is now brought for the sum of $100,000 additional, based uppn the destruction and extinction of the firm’s business, aside from its loss of physical *448 property. It is asserted that a cause of action exists because the acts of the defendant not only destroyed the business of the plaintiff by taking its farm and canning-plant, but by taking all the lands adjoining, peculiarly adapted to the production of Shoe Peg corn, and the only place so adapted, it has made it impossible for the plaintiff to acquire a similar business anywhere else. In other words, its entire business enterprise is wholly and completely' annihilated forever by the destruction of the plant and the source of its supply.
There are apparently two insurmountable obstacles to a recovery in this case. First, the President was authorized under the statute to fix just compensation, and if the amount so fixed was unsatisfactory to the party, he might accept 75 per cent of the award and sue for such further sum as added thereto would amount to just compensation. The plaintiff accepted the award. The statute having pointed out a definite way, and the party having observed the same without availing itself of the privileges of reserving the right to a further demand, may not accept its benefits and then seek to discredit the same. If the award did not meet the full measure of just compensation, the plaintiff should have taken advantage of the very liberal terms of partial settlement and asserted its claim for the alleged balance. It may not under the law do both.
Even without this defense the suit must fail. The question at issue has been determined by the Supreme Court in the case of Bothwell v. United States, 254 U. S. 231. The plaintiff contends for a loss of $100,000. The sum so claimed is alleged to be the losses it sustained from being foreclosed from conducting its business enterprise, coupled with the complete extinction of its source of supply. An argument is advanced that because of the taking over of this large acreage of adjoining farm lands peculiarly adapted to raising Shoe Peg corn the plaintiff was unable to reestablish its canning industry anywhere in the United States.
The record shows that the average annual profit realized from the industry was $6,000. The defendant allowed and the plaintiff received $76,000 in cash. Allowing a return of 6 per cent of the sum so received, the plaintiff still has an *449 income from the taking of its capital investment of $4,560 per annum, which amount, with addition of the individual earning capacity of the members of the firm, will not, in view of past history, fall much, if any, short of the annual dividends received from the industry as a going concern. So it would be difficult, even if the asserted contention were tenable, to predicate a judgment for the amount claimed upon any other than a mere speculative theory. Obviously, to do so would involve the assumption of a continuance of contemporaneous conditions, full crops, business stability, etc.
The petition is dismissed. It is so ordered.
Geaham, Judge; Hat, Judge; Downey, Judge; and Campbell, Ghi&f Justice, concur.
addendum.
On Monday, June 4, 1923, we handed down an opinion in this case dismissing the petition. The court without division was of the opinion that under the statute the plaintiff might not accept the full amount of the award of the President and thereafter sue for such further sum as added thereto will amount to just compensation. On the same day the Supreme Court decided the case of the Houston Coal Co. v. United States, 262 U. S. 361, and entertaining some doubt as to whether this feature of the instant case was not concluded by this decision, we decided to withhold our opinion in this case. If if were not for the decision in the Houston Coal Co. case we would adhere to our former views. The issue in the Houston Coal Co. case arose under a different statute, and while the wording is the same, the court seems to have given effect to protest, duress, and an express reservation of the plaintiff to demand more, a state of facts absent from this case. The question in the Houston Coal Co. case was one of jurisdiction. This case is here on the merits, and because of the apparent difference as to protest, notice of reservation, and intention to sue,' as well as duress, we arc somewhat doubtful as to the scope of the decision in the Houston Coal Co. case when applied to the present record. *450 The vast number of cases involving large sums of money heretofore paid, as was done in this case, manifestly caused us to hesitate to apply the rule announced beyond the strict limitations appearing in the opinion. This will be added to the former opinion.