Williams, Judge,
delivered the opinion of the court:
. The defendant demurs to the petition herein, alleging that it fails to state a cause of action against the United States within the jurisdiction of the court.
The petition alleges:
“ That the vessel Leora M. Thurlow, built at Bath, Maine, in 1891, was a three-masted schooner of the burden of about 213 gross tons, the property of Alfred H. Post & Company, of 11 Broadway, New York, N. Y., and was, during all the times hereinafter mentioned, under American registry and during said time’was employed as a merchant vessel in. the lumber-carrying trade among the ports of the West Indies and the Gulf of Mexico.
“ That in or about the month of April, 1918, while at the port of Havana, Cuba, the master of said schooner Leora M. Thurlow was ordered and directed by the Joint Committee on West Indian Transportation of the United States Shipping Board, and the United States Food Administration' and/or the officers, directors, agents, or employees of said committee, board of administration, who were vested with authority to so order and direct under the provisions of the emergency shipping act of June 15, 1917, as amended by the act taking over facilities around shipyards, approved April 22, 1918, and the emergency shipping provision of the act of November 4, 1918, to take on a cargo of sugar for transportation to the port of Savannah, Georgia, notwithstanding the protestations of the master that said schooner was built only for the lumber trade, and was entirely unsuited to carry a cargo of sugar, and was for the purpose of carrying such a cargo or any dry or perishable cargo not seaworthy and not classed; the aforementioned committee, board of administration, directed that clearance be denied if she loaded any other cargo. The powers granted to the President in the acts referred to above were delegated to the Shipping Board and the Emergency Fleet Corporation by Executive order of July 11, 1917, and they were designated to exercise the powers conferred therein.
“ That on or about the 26th day of April, 1918, notwithstanding the aforementioned protests of the master of the said schooner, Léora M. Thurlow, he was ordered by the *371 officers, directors, or agents of the Joint Committee on West Indian Transportation of the United States Shipping Board, and the United States Food Administrator under the authority given in sections 1, 2, and 3 of the act referred to in section 3 hereof, to enter into a charter with the Gal-ban, Lobo & Cia S en C for the transportation of about nineteen hundred bags of sugar from Havana, Cuba, to Savannah, Georgia, at the regular rate of the carriage of sugar between such ports.
“ That on information and belief, on or about the 30th day of April, 1918, the schooner Leora M. TJmrlow left the port' of Havana with a cargo of about 1,623 bags of sugar shipped by Messrs. Galban, Lobo & Cia S, en C consigned to Savannah Sugar Kenning Corporation, Savannah, Georgia, as ordered by the Joint Committee on West Indian Transportation of the United States Shipping Board and the United States Food Administration.
“ On information and belief, that thereafter the schooner Leora M. Thurlow encountered storms and seas and fearing for the safety of the sugar proceeded to the port of Key West, Florida, instead of Savannah, Georgia, and at- said place discharged her cargo, but not in like good order and condition as shipped, but on the contrary badly damaged by sea water. That by reason of the premises, the shippers and consignees of the cargo sustained damages in an amount, as alleged by them, of $10,000.00.
“ That in or about the month of June, 1918, while the aforementioned schooner was in the port of New York, the said schooner was arrested by the Savannah Sugar Refining Corporation, owner of the sugar cargo, and a libel brought against her for the damages sustained by the cargo of sugar as aforesaid.
“ That for the purpose of releasing said schooner from arrest, the National Surety Company furnished a bond in the amount of $4,600.00, effective the 5th day of June, 1918. That thereafter, and while action was pending against said schooner in the United States District Court for the Southern District of New York, the plaintiff made investigations as to proof of the facts set down and alleged in the libel and, on recommendation of its attorneys, the said National Surety Company adjusted the claim for the sum of $5,500.00, which the plaintiff paid on the 26th day of June, 1924.
“ By reason of the foregoing facts, plaintiff is entitled to have and to receive from the United States of America the sum of $5,500.00 and there exists in favor of defendant against plaintiff no set-off or counterclaim of any kind or description.”
*372 In support of tbe demurrer the defendant urges (1) that the schooner Leora M. Thurlow was not taken over or requisitioned by the Government; and (2) that the plaintiff not having presented its claim for just compensation to the President or to the United States Shipping Board Emergency Fleet Corporation as provided under the act-of June 15, 1917 (40 Stat. 182), and the proclamation of the President of July 11, 1917, delegating his authority to the said board, or to the United States Shipping Board as provided by the act of June 5, 1920 (41 Stat. 988), is precluded from maintaining suit on the said claim in this court; (3) that the claim is barred by the six-year statute of limitations prescribed by section 156 of the Judicial Code; and' (4) the claim being for an amount alleged to have been paid in compromise of a claim for unliquidated damages, the defendant not being a party to the alleged suit or alleged compromise, there is no privity of contract, and that plaintiff is a mere volunteer and can not recover.
In its brief in answer to the demurrer, the plaintiff says;
“ This claim is for just compensation under the provisions of the emergency shipping act of June 15, 1917, as amended April 22, 1918, and the provisions of the act of November 4, 1918. The basis of claim is the requisitioning by the Government of the schooner Leora M. Thurlow for voyage to Savannah, Georgia, from Havana, Cuba. The National Surety Company, plaintiff herein, states that this action is not brought by way of subrogation to the rights of the owners of Leora M. Thurlow, but as an original claimant.”
The act of June 15,1917, 40 Stat. 182, c. 29, provides:
“ The President is hereby authorized and empowered within the limits of the amounts herein authorized (a) to place an order with any person for such ships or material as the necessities of the Government, to be determined by the President, may require during the period of the war and which are of the nature, kind, and quantity usually produced or capable of being produced by such person; (b) to modify, suspend, cancel, or requisition any existing or future contract for the building, production, or purchase of ships or material * * *; (e) to. purchase, requisition, or take over the title to, or the possession of, for use or operation by the United States any ship now constructed or in the process of construction or hereafter constructed, or any part thereof, *373 or charter of such ship. Compliance with all orders issued hereunder shall be obligatory on any person to whom such order is given, and such order shall take precedence over all other orders and contracts placed with such person.”
If the Leora M. Thurlow was taken over or requisitioned by the Government it was under subsection (e) of the aforesaid section which authorized the President to “ purchase, requisition, or take over the title to, or the possession of, for use or operation by the United States any ship * * * or charter of such ship.”
The allegations of the petition as to the acts of the defendant do not constitute the taking over or the requisitioning of the Leora M. Thurlow. The vessel was at no time in possession of the defendant, nor were its owners at any time deprived of its use. The charter party for the transportation of the sugar was entered into between the owners of the vessel and the owners of the sugar. If such charter party was entered into by the owners of the Leora M. Thurlow as the plaintiff alleges, because of the orders issued by agents of the defendant that a cargo of sugar should be loaded and transported and that clearance for the vessel would be refused if the orders were not complied with, such orders do not amount to the taking or requisitioning of the vessel. If such order or orders were issued by agents of the defendant, they were orders issued in the sovereign capacity of the defendant, and during a time of war when the Government was exerting every possible effort to preserve itself and to achieve victory. It is a well-settled rule of law that losses resulting from such acts of sovereignty are consequential losses and are not recoverable. Parish v. United States, 57 C. Cls. 529; Southern Pacific Co. v. United States, 58 C. Cls. 428; Mitchell v. United States, 58 C. Cls. 443, affirmed 267 U. S. 341; Jackson v. United States, 230 U. S. 1; Bedford v. United States, 192 U. S. 217.
The facts in the instant case are in all material respects strikingly similar to the facts presented in United States v. Carver et al., 278 U. S. 294. The Betsy Ross, a vessel of American registry, while at Melbourne, Australia, during the war, and under charter to pick up and transport a cargo of ore from New Caledonia, was denied clearance by *374 Australian authorities at the request of the United States-Shipping Board, pending the board’s decision whether the-vessel should be ordered to abandon the charter and return to the United States with a cargo of wheat. In this situation the owners accepted a charter offered by the United States Food Administration Grain Corporation to carry wheat from Melbourne to New York, having concluded,, after negotiations with the Food Administration, that they would better sign the charter rather than have the United States Government take over the vessel. The freight received under the wheat charter was less than would have-been received under the ore charter, and the owners sued for the difference in this court, alleging that the Shipping-Board, on behalf of the Government, “ made use of, requisitioned, or took over the vessel from their service and. business, for the use' of the United States Grain Corporation, in the transportation of wheat.”
This court gave judgment for the plaintiff, which judgment the Supreme Court reversed and held there was no* taking or requisitioning of the vessel or of the charter.. The court said:
“ 2. There can be no recovery under clause (e) of the act on the theory — upon which alone the respondents’ petition was based — that the Shipping Board requisitioned or took over the vessel and deprived the respondents of its use. The findings not only fail to show any requisition or taking-over of the vessel, but, on the contrary, show that it remained in the possession of the respondents and was used by them for their own benefit in carrying out the wheat charter which they made with the Grain Corporation for the very purpose of anticipating and preventing the taking over of the vessel by the Government. Compare American Smelting Co. v. United States, 259 U. S. 75, 78.
“And even if the Shipping Board had in fact carried out its intention of ordering the vessel to abandon the chrome ore charter and return to the United States with a cargo-of wheat, this plainly would not have been the placing off ‘ an order ’ for the ship within the meaning of clause (a) of the act.
“ 3. The Shipping Board did not requisition the chrome-ore charter under clause (e) of the act. This would have required the Shipping Board to take over the charter itself for the transportation of chrome ore. This it did not do.. *375 The charter was not appropriated or kept alive for the use of the Government. See Omnia Co. v. United States, 261 U. S. 502, 513; Union Petroleum S. S. Co. v. United States (C. C. A.), 18 F. (2d) 752, 753.”
In view of our decision that the Leora M. Thurlow was not taken over or requisitioned by the defendant as alleged in the petition, it is not deemed necessary to discuss or pass upon the other points urged by the defendant in support of the demurrer. The demurrer is sustained and the petition dismissed. It is so ordered.
Whaley, Judge; LittletoN, Judge; GREEN, Judge; and Booth, Chief Justice, concur.