**RUDOLPH F. MATZER & ASSOCIATES, INC., a Florida corporation, Plaintiff,**

v.

**John W. WARNER, Secretary of the Navy, et al., Defendants.**

**Civ. No. 72–568.**

United States District Court, M. D. Florida, Jacksonville Division.

Oct. 6, 1972.

George D. Gabel, Jr., Jacksonville, Fla., for plaintiff.

James M. McLean, Jacksonville, Fla., for CDI.

Robert F. Yerkes, Asst. U. S. Atty., Jacksonville, Fla., for Mr. Secretary Warner.

## OPINION

WILLIAM A. McRAE, Jr., Chief Judge.

Plaintiff, Rudolph F. Matzer & Associates, Inc. (Matzer), brought this action seeking a declaration that the United States Navy acted arbitrarily in awarding certain contracts to Comprehensive Designers, Inc. (CDI) and Stanwick Corporation (Stanwick), and praying for appropriate injunctive relief. The contracts in issue are for the performance of marine architectural services. They are the end product of the procurement process initiated by the Navy in its Solicitation No. N00612–72–R–0204, and were awarded on July 24, 1972. Eight concerns, among them plaintiff and defendants CDI and Stanwick, submitted offers in response to this solicitation. It is the method by which the Navy evaluated these offers that plaintiff alleges to have been arbitrary, capricious and without rational basis.

At hearings held in this case on September 14 and 15, 1972, the respective parties agreed that final disposition of this case would be appropriate without

further judicial proceedings. *See* Rule 65(a)(2), Fed.R.Civ.P.

## FINDINGS OF FACT

1. In its Solicitation No. N00612–72–R–0204, the Navy requested offers to perform naval architectural services under an indefinite quantity labor hour contract. Although the amount of work arbitrarily chosen for purposes of comparing the offers was 24,000 man hours, the Navy guaranteed only 500 man hours of work. An agent of the Navy informed CDI, but not Matzer, that, although only 500 man hours of work were guaranteed, the Navy actually needed at least 9½ man years of work performed.

2. After the Navy had received offers in response to its Solicitation No. N00612–72–R–0204, a representative of the Navy informed a representative of CDI who were its competitors for the contract.

3. Matzer is a Jacksonville based naval architect with eight full-time technically skilled employees.

4. CDI is an organization that furnishes a wide range of technical services in engineering and related fields. At its southeastern headquarters in Orlando, Florida, CDI employs eight persons full time in managerial and clerical positions. CDI keeps on file curricula vitae of a great many engineering and other personnel, most of whom are employed by other concerns. These persons are known in the trade as "job-shoppers" and CDI serves as a kind of broker for their services.

5. Pursuant to the request for proposals, Matzer, CDI and Stanwick submitted the per diem rate at which they would reimburse their respective employees for travel expenses. Matzer proposed a rate of $25.00. CDI proposed a rate of $10.00.

6. The contracting officer, on the basis of the per diem estimates, added $30,-000 ($10 for each 8 man hours) to CDI's contract price and $75,000 ($25 for each 8 man hours) to Matzer's contract price.

7. Pursuant to the request for proposals, Matzer submitted resumes of its eight full-time employees together with resumes of other persons under contractual obligation to perform services for the firm.

8. CDI submitted sixteen resumes including resumes of persons it did not employ but who had applied for employment during various times in the past few years. One of the persons whose resume was submitted was dead at the time CDI submitted the resume. Of the eight persons performing the present contract for CDI, only one was a person whose resume CDI submitted.

9. In evaluating the proposals submitted in response to Solicitation No. N00612–72–R–0204, the Navy contracting officer conscientiously followed procedures which, although not explicitly authorized by regulation or other formal rule, are regularly employed by the Navy at the Naval Supply Center in Charleston, South Carolina, for this purpose.

10. Under these procedures, the contracting officer evaluated the respective proposed prices by assigning point values, as follows: the lowest bidder received 100 points for price. The highest bidder received 1 point for price. The difference between the highest and lowest prices was divided by 98, which yielded a dollars-per-point figure. Intermediate bidders were assigned point values by subtracting their respective bid prices from the high bid price, and dividing each result by the dollars-per-point figure. This quotient plus one was the point value assigned to each intermediate bidder for price.

11. Under these procedures, the contracting officer further evaluated the respective proposals by assigning point

values for various attributes of the firms that submitted proposals, as follows:

| | |
|---|---|
| Technical education and experience of key personnel | 10 possible points |
| Experience in management of a marine design service facility of key personnel | 15 possible points |
| Qualification and experience of engineering personnel | 20 possible points |
| Qualification and experience of technicians and drafting staff | 15 possible points |
| Volume of services firm has recently provided in this field | 15 possible points |
| Scope of services firm has provided | 15 possible points |
| Specified other factors | 10 possible points |

With the exception of the three categories last named, the contracting officer relied exclusively on the resumes accompanying the proposals in assigning point values.

12. After having assigned point values for price and for the other factors enumerated above, the contracting officer calculated the total for each proposal. CDI had the highest total and was awarded the contract.

13. On September 5, 1972, CDI began work under the contract and has partially completed the first project, pursuant to Task Order No. N62670–73–D–0044. Halting work on this first project, at this point, would necessitate substantial duplication of effort.

## CONCLUSIONS OF LAW

### Standing

■ The leading case on standing in this class of cases is Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970). In *Scanwell*, the Court reversed the decision of the District Court which had held that a disappointed bidder lacked standing to challenge the bid of a competitor as being unresponsive within the meaning of applicable regulations. 41 C.F.R. § 1–2.–404–2(a) (1969). The Court of Appeals held, further, that the "suit is not barred by considerations of sovereign immunity, administrative discretion, or failure to exhaust administrative remedies". Scanwell Laboratories, Inc. v. Shaffer, supra at 876. The plaintiff in *Scanwell* had

submitted the second lowest bid. The plaintiff in the present case did not have the second highest point score. This difference is irrelevant, however, on the theory of standing enunciated in *Scanwell* and adopted in the present case. In each case, the plaintiff has standing as a "private attorney general." Neither plaintiff sought to redress "legal rights" within the meaning of Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940). No contractor is vested with any enforceable right to the award of any government contract. Neither the plaintiff in *Scanwell* nor the plaintiff in the present case can ask for more than that the contract be awarded in accordance with law. Whether they may ask for that much is an open question in the Fifth Circuit. Allen M. Campbell Co. General Contractors, Inc. v. Lloyd Wood Construction Co., 446 F.2d 261, 264 n. 5 (5th Cir. 1971) (determination on the merits adverse to plaintiff; question of standing "in other contexts" expressly reserved).

Under *Scanwell's* interpretation of the Administrative Procedure Act's standing provisions, 5 U.S.C. § 702, a contractor in the position of plaintiff Matzer is a "person . . . adversely affected or aggrieved by agency action within the meaning of a relevant statute," *id.;* and the "relevant statute" is the Walsh-Healey Government Contracts Act, 41 U.S.C. §§ 35–45 (1936), as amended, ch. 530, tit. III, § 301, 66 Stat. 308 (1952). This Court concurs in the carefully reasoned opinion in *Scanwell*, which underlies the "person aggrieved" interpretation of standing requirements in cases like the present one. *Contra,* Gary Aircraft Corporation v. United States, 342 F.Supp. 473 (W.D.Tex.1972).

### Scope of Review

■■ Distinct from the question of standing is the question of the proper scope of judicial enquiry. The latter question has been the focus of subsequent opinions by the District of Columbia Court of Appeals, which decided the *Scanwell* case. That Court has laid down

the rule that a court "must refrain from . . . intervention into the procurement process unless the actions of the executive officials are without any rational basis." M. Steinthal & Co. v. Seamans, 147 U.S.App.D.C. 221, 455 F.2d 1289, 1306 (1971). *See* Wheelabrator Corporation v. Chafee, 147 U.S.App.D.C. 238, 455 F.2d 1306 (1971). The corollary of this rule is that if procurement officials act in a manner for which there is no rational basis in applicable law, they have exceeded their legislative mandate and courts have a duty to give relief as sought in the present case. This judicial duty also arises when a procurement official exercises discretion, which is concededly his under applicable law, in an abusive, unlawful or irrational manner.

### The Merits

██ In the present case, judicial intervention is required on the three grounds that follow:

First, there have been violations of applicable regulations. An agent of the Navy informed CDI who its competitors were in the face of a requirement that "[a]fter receipt of proposals, no information regarding the number or identity of the offerors participating in the negotiations shall be made available . . ." ASPR 3–805.1(b). An agent of the Navy informed CDI, but not Matzer, of the amount of work the Navy had as a backlog. Unilateral knowledge of the Navy's actual needs is patently unfair and when the government itself is the source of the knowledge there is also a violation of an applicable regulation. ASPR 3–805.1(e)(ii).

Second, the contracting officer's treatment of per diem estimates was manifestly irrational. He added $75,000 to Matzer's bid on the assumption that Matzer, a Jacksonville concern, would pay each employee per diem expenses for every day worked when the contract calls for almost all of the work to be performed in Jacksonville. In this way, Matzer's bid price was substantially overstated.

Third, the evaluation of personnel qualifications on the basis of resumes of persons who are not employed by an offeror and who will not perform the work is patently irrational. From the standpoint of efficient allocation of technical manpower, perhaps "brokers" like CDI should be encouraged. What is in the best interest of national defense in this respect is for the Navy, not for this Court, to decide. But if offerors are to be evaluated on the basis of the qualification of their personnel, this is obviously not the way to do it. In traditional administrative law terms, there was no substantial evidence from which the contracting officer could conclude, as he did, that CDI had better qualified personnel than did Matzer.

Plaintiff makes the additional claim that the evaluation of price by the method set forth in Findings of Fact Nos. 10 and 11 is irrational for the reason that the narrower the spread between bid prices, the greater is the relative importance of the price. Although there is much force to this argument, this Court believes that the choice of method for evaluation of the offers is within the discretion of the Navy.

In view of the foregoing, this Court entered an order on September 22, 1972, requiring that the award of these contracts be set aside. Afterward, the Navy petitioned that the job already begun by CDI be permitted to go forward in order to avoid expensive duplication. Since the relief plaintiff requests in this respect is equitable in nature, this exception was permitted by order of this Court entered on October 2, 1972.