QONAAR CORPORATION, a Delaware Corporation

v.

The METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY.

CUBIC WESTERN DATA, INC.

v.

The METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY.

Civ. A. Nos. C77–1218A and C77–1481A.

United States District Court, N. D. Georgia, Atlanta Division.

Nov. 4, 1977.

**1170** 

William H. Izlar, Jr., Michael C. Russ and George S. Branch, King & Spalding, Atlanta, Ga., Matthew S. Perlman and Douglas G. Green, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C., Thomas H. Morsch, Sidley & Austin, Chicago, Ill., for plaintiff in C77–1218A.

Jacob B. Pompan, Robert H. Rumizen, George B. Reynolds, Robert D. Wallick, Steptoe & Johnson, Washington, D. C., for plaintiff in C77–1481A.

W. Stell Huie, D. Lake Rumsey, Jr., and Lawrence L. Thompson, Huie, Sterne, Brown & Ide, Atlanta, Ga., for defendant.

### ORDER

MOYE, District Judge.

This action is the consolidation of two cases brought against the Metropolitan Atlanta Rapid Transit Authority (MARTA) by two disappointed bidders for Contract CQ210 for the design, production, and installation of a fare collection system to be used in the MARTA subway presently under construction. The corporations in question are the Duncan Industries (Duncan) division of Qonaar Corporation, a Delaware corporation, the low bidder; and Cubic Western Data, Inc. (Cubic Western), a California corporation, the second low bidder. Each plaintiff seeks an injunction compelling MARTA to award it the contract in question. The cases were consolidated on MARTA's motion on October 17, 1977. Presently pending are Qonaar's motion for summary judgment and Cubic Western's motion to dismiss paragraph 4 of the defendant's counterclaim.

Qonaar's motion for summary judgment is based on the following undisputed facts: MARTA issued an Invitation for Bids (IFB) on Contract CQ210 on March 28, 1977, pursuant to section 14 of the MARTA Act, Ga.L.1965, p. 2243, which provides:

> Competitive bids shall be secured before any acquisition . . . of properties by contract or otherwise is made by the Authority, or before any contract is awarded for construction, alterations, supplies, equipment, repairs or maintenance, or for rendering any services to the Authority; acquisition shall be made from, and contracts awarded to, the lowest responsible bidder . . . .

The invitation was published in The Atlanta Journal on May 20, 1977, and May 27, 1977. Eighty per cent of the funding for Contract CQ210 was to be provided by the Urban Mass Transportation Administration (UMTA) under the Urban Mass Transportation Act, 49 U.S.C. §§ 1601–1612.

The sealed bids were opened on June 3, 1977, with Duncan being the low bidder at $3,726,150, and Cubic Western submitting the second low bid at $3,749,614. MARTA announced that an award of the contract would be made on July 11, 1977. On June 17, 1977, Cubic Western filed a protest with MARTA, alleging that Duncan's bid was not responsive to the IFB because of a failure to respond to certain provisions of Exhibit J of the IFB. Cubic Western contended further that Duncan lacked the experience necessary to be considered a responsible bidder. MARTA rejected Cubic Western's contention that Duncan was not a responsible bidder, but, on July 23, 1977, sought UMTA's concurrence in an award to Cubic Western on the grounds that Duncan's bid failed to respond adequately to Exhibit J. On July 1, Duncan filed a pro-

test with UMTA contending that MARTA had no valid legal basis for awarding the contract to Cubic Western rather than Duncan.

On July 11, 1977, UMTA issued an opinion finding that Duncan was a fully responsive and responsible bidder, specifically rejecting MARTA's finding of nonresponsiveness and conditioning UMTA's participation in the funding of Contract CQ210 upon MARTA's award of the contract to Duncan.

On July 25, 1977, MARTA, on the advice of its staff counsel, announced that an award of Contract CQ210 would be made to neither Duncan nor Cubic Western and that a new Invitation for Bids would be released. On August 4, 1977, this Court granted Qonaar's motion for a preliminary injunction enjoining MARTA from awarding a fare collection contract to any bidder other than Duncan, from entering into a fare collection contract with any party other than Duncan, and from receiving further bids on a fare collection contract. The order also directed Qonaar and MARTA to submit briefs on the issue of the responsiveness of Duncan's bid to the IFB to the Comptroller General of the United States in order to have the Comptroller General render an advisory opinion to the Court. On October 7, 1977, the Comptroller General rendered its opinion, stating that Duncan's failure to respond fully to Section J of the IFB was a matter of responsibility of the bidder and not responsiveness of the bid and that Duncan's bid was therefore responsive to the IFB. Duncan has now moved for summary judgment, claiming that MARTA's rejection of Duncan's bid and its decision to solicit new bids on Contract CQ210 constituted arbitrary and capricious actions which must be reversed.

## A. Applicable Law

Qonaar's first argument is that the law to be applied in the decision of this case is the federal contract procurement law. Qonaar's contention is that federal procurement law applies, based on Article 12 of the "General Conditions for Furnishing and Installing the Fare Collection Equipment" in the IFB, which states:

*Governing Law*: The Authority will finance the work in part by means of a grant under the Urban Mass Transit Act of 1964, as amended, administered by the U. S. Department of Transportation under a Capital Grant Contract between the Authority and the United States. In order to assure that the work is properly conducted in all respects and in conformity with the said Capital Grant Contract with the laws and regulations governing the same, all questions concerning the Contract between the Authority and the contractor, including all bids therefor, and the award, execution, construction, and performance thereof, shall be governed and decided according to law applicable to Government procurement contracts.

Qonaar states that under the applicable Georgia law of conflicts the law specified in the contract, in this case the federal law, must be applied.

Qonaar shows further that under *Massman Construction Company v. United States*, 60 F.Supp. 635, 643, 102 Ct.Cl. 699 (1945), a soliciting agency may not reject all submitted bids and solicit new bids except for "cogent reasons." The Federal Procurement Regulations, 41 C.F.R. § 1–2.404–1(a), similarly provide:

Preservation of the integrity of the competitive bid system dictates that, after bids have been opened, award must be made to that responsible bidder who submitted the lowest responsive bid, unless there is a compelling reason to reject all bids and cancel the invitation.

The rationale presented for requiring a "cogent and compelling" justification for bid rejection is the injury which results to a low bidder from the exposure of its bid to its competitors. It is this injury to itself which Qonaar seeks to prevent.

MARTA takes the position that this action is governed completely by the Metropolitan Atlanta Rapid Transit Authority Act of 1965 (the Act), Ga. Laws 1965, at 2243. Section 14(j) of the Act provides:

The Authority shall have the right to reject any or all bids or quotations, or parts of any or all bids or quotations, whenever in the opinion of the Board such rejection is necessary for the protection of the interests of the Authority. In every such case a record shall be made setting forth the reason for such rejection which record shall thereafter be kept on file.

Further, MARTA shows that in Article 7 of the IFB, MARTA specifically reserved the right to reject any and all bids. MARTA contends that policies promulgated by the executive branch through the Office of Management and Budget directly control grants from administrative agencies to state and local grantees such as MARTA. OMB Circular A–102 states:

The standards promulgated by this part apply to all Federal agencies responsible for administering programs that involve grants to State and local governments.

Attachment O to Circular OMB A–102 specifically addresses bid procurement and provides:

Where . . . advertised bids are obtained the awards shall be made to the responsible bidder whose bid is responsive to the invitation and is most advantageous to the grantee, price and other factors considered. . . . Invitations for bids shall clearly set forth all requirements which the bidder must fulfill in order for his bid to be evaluated by the grantee. Any or all bids may be rejected when it is in the grantee's interest to do so and when such rejections are in accordance with state and local law, rules, and regulations.

MARTA and Cubic Western both contend that the reference in Article 2 of the IFB to federal law controlling bid procurements includes OMB A–102, resulting in application of the MARTA Act as the correct standard.

■ The Court finds that the federal law to be applied under Article 12 of the IFB includes OMB A–102 and thus requires reference to the standards for bid rejections set out by state law. In *Blount Bros. Corp.;*

*Darin and Armstrong, Inc.,* Comp.Gen. B–185322, 76–1 CPD 172, a grantee of the Environmental Protection Agency rejected all bids submitted on a water treatment project. In upholding said rejection, the Comptroller General applied EPA regulations which implemented OMB A–102 and held that under that standard "the propriety of the rejection of all bids by the grantee is to be determined according to state and local law."

■ Qonaar argues that the EPA regulations promulgated to implement OMB A–102 make the *Blount Bros.* case distinguishable from the instant action. This argument is not persuasive; whether or not the granting agency has chosen to author regulations for the implementation of a governing federal policy does not affect the applicability of that policy. The OMB Circular is as applicable to grants through UMTA as it is to grants through other agencies, whether or not specific regulations have been passed to implement it.

■ The Court finds further that, contrary to Qonaar's assertion, Article 12 of the IFB does not make Federal Procurement Regulation 1–2.404–1, 41 C.F.R. § 1–2.404–1, directly applicable to MARTA. As provided in F.P.R. 1–1.002, 41 C.F.R. § 1–1.002, the Federal Procurement Regulation System codifies and publishes "uniform policies and procedures applicable to Federal agencies in the procurement of personal property and nonpersonal services (including construction) . . . ." While UMTA must comply with the FPR system in procuring bids for contracts to be performed directly for the agency, the regulations are not made applicable to grantees of federal agencies.

■ Finally, the Court finds that Article 7 of the IFB, an unqualified provision that MARTA shall have the right to reject any or all bids, is a specific clause in the contract which prevails over the more general Article 12. *See Western Oil Fields, Inc. v. Pennzoil United, Inc.,* 421 F.2d 387 (5th Cir. 1970). If MARTA had intended the "cogent and compelling" standard re-

quired by the Federal Procurement Regulations and federal case law to apply, the inclusion of Article 7 of the IFB would have been meaningless. Accordingly, MARTA's decision to reject all bids must be measured by the "arbitrary and capricious" standard required under the MARTA Act.

B. *Arbitrariness of Rejection of All Bids*

Qonaar asserts that MARTA's refusal to award Contract CQ210 to the plaintiff and subsequent rejection of all bids on the contract were arbitrary and capricious actions which require reversal under state law. Qonaar argues that Duncan's bid was fully responsive to the IFB. The amendments to Exhibit J, argues Qonaar, were properly supplied after the opening of bids inasmuch as Exhibit J is directed to bidder responsibility and not to the responsiveness of the bid. Qonaar relies heavily on UMTA's finding that the Duncan bid was responsive and that UMTA funding would be conditioned on the award of the contract to Duncan, and states that the reasons given by MARTA for refusing to award the bid to Duncan are inadequate. The stated reasons for MARTA's rejection of all bids are:

(1) MARTA's staff counsel's opinion that the Duncan bid was not responsive to the IFB;

(2) UMTA's finding that Duncan's bid was responsive and award to Duncan was mandated;

(3) the pendency of Cubic Western's protest to the General Accounting Office seeking reversal of the UMTA decision;

(4) the existence of a procedural defect in the advertising for Contract CQ210 (the advertisements stated that bids were to be opened on June 1, 1977, when in fact they were opened on June 3);

(5) the fear on MARTA's part that any solution other than rejection of all bids would result in further protests and litigation, causing a costly delay in the installation of the system.

Qonaar contends that no basis whatever existed for the Staff Counsel's finding that the Duncan bid was not responsive to the IFB. The pleadings indicate that the decision that the bid was not responsive was based on paragraph 4.1 of an unamended copy of the IFB which contained language stating that failure to comply with the technical requirements of Exhibit J would result in a bid being considered nonresponsive. Before the IFB was released, paragraph 4.1 was amended to provide that failure to provide sufficient data to show compliance with Exhibit J would result in rejection of the bid. Qonaar asserts that MARTA's reliance on the unamended version of paragraph 4.1 resulted in the adoption of an irrational position which must be found arbitrary on its face.

Qonaar contends further that MARTA's decision to reject all bids based on the fear of ensuing litigation is unsupportable and, if upheld, would lead to a rash of suits by disappointed bidders hoping to thwart the legitimate award of contracts. Finally, Qonaar states that the MARTA concern regarding publication of the date of opening bids is a make-weight argument which has no substantive validity and was propounded by MARTA merely to gain UMTA concurrence in MARTA's decision to reject all bids.

MARTA contends that its rejection of all bids was justified by the combination of all the above factors and urges that the decision was in no way ultra vires, fraudulent and corrupt, or a gross abuse of discretion as required under Georgia Law. *See Gilbert v. Jackson,* 223 Ga. 242, 243, 154 S.E.2d 366 (1965); *J. C. Lewis Motor Co. v. Mayor and Council of Savannah,* 210 Ga. 591, 592, 82 S.E.2d 132 (1954). MARTA urges that its action in deciding that Qonaar's bid was nonresponsive must be evaluated in light of the information before the Board at the time its decision was made, not in view of the subsequent questions on that issue.

■ The Court finds that MARTA did not act in an arbitrary and capricious manner in deciding to reject all bids for Contract CQ210. While Qonaar cites cases which have found action to be arbitrary where an agency has relied on incorrect

documents in deciding on a contract award, see, e. g., *Rudolph F. Matzer & Assoc., Inc. v. Warner,* 348 F.Supp. 991 (M.D.Fla.1972), this Court finds those cases distinguishable from the instant action. The Comptroller General's opinion that Duncan's bid was responsive found that portions of paragraph 4.1 "could arguably refer to the item to be furnished rather than to the bidder's capability to furnish it." The sentences in question read as follows:

> Each Bidder shall furnish supporting evidence that the ticket handler specified herein can be supplied as specified. This evidence shall consist of test data which demonstrates compliance with the basic performance parameters specified on Exhibit J.

These portions of paragraph 4.1 were not amended and give credence to MARTA's staff counsel's determination that Exhibit J required information which would ensure that the machine to be constructed by the contractor would comply with all of MARTA's specifications and thus involved bid responsiveness. Certainly it cannot be said that MARTA's staff counsel's judgment that these sentences measured responsiveness to the IFB constituted a decision which was ultra vires, fraudulent and corrupt, or a gross abuse of discretion.

The MARTA Board's decision to reject all bids cannot be found arbitrary in view of the information presented to it. Qonaar does not allege that any of the staff recommendations were made in bad faith. Therefore, the Board must be found to have acted on the honest opinion of its advisors that the Qonaar bid was not responsive, that technical violations of the advertising requirements had occurred, that MARTA was entitled to reject all bids under the applicable state statutes and the IFB, and that rejection and resolicitation was the most expedient of the alternatives available and the alternative most likely to accomplish installation of the fare-handling equipment within the established time deadline.

■ The MARTA Board is a public agency which is empowered to act within its discretion in rejecting bids. *See J. C. Lewis*

*Motor Co. v. Mayor and Council of Savannah, supra;* *Peeples ·v. Byrd,* 98 Ga. 688, 25 S.E. 677 (1898). The discretion vested in the agency must be interpreted very broadly. *Id.* Within the facts presented by this case, the Court cannot find that MARTA exceeded the authority vested in it under the MARTA Act.

Accordingly, Qonaar's motion for summary judgment is hereby DENIED. The preliminary injunction granted to Qonaar on August 4, 1977, is hereby VACATED.

In view of the above findings, Cubic Western's motion to dismiss Count Four of MARTA's counterclaim has been rendered moot.